# FOWLER v. UNION PORTLAND CEMENT COMPANY.

No. 2177.   Decided July 21, 1911 (117 Pac. 462).

1. MASTER AND SERVANT—INJURIES—JURY QUESTION—NEGLIGENCE. In an action for the death of an employee by the breaking of a cable on which a movable carrier with a load was being operated, permitting it to fall on intestate, evidence *held* to make it a jury question whether defendant was negligent in fastening the cable end.   (Page 369.)

2. MASTER AND SERVANT—INJURIES TO SERVANT—JURY QUESTION—CONTRIBUTORY NEGLIGENCE. In an action for the death of an employee by the breaking loose of a cable on which a movable carrier with a load was being operated, evidence *held* to make it a jury question whether intestate was guilty of contributory negligence.   (Page 371.)

3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OBEDIENCE TO ORDERS. A servant injured while doing an act in obedience to orders is not guilty of contributory negligence, unless the act committed involved danger so obvious that a reasonably prudent person with his knowledge thereof would not have undertaken it.†   (Page 373.)

†Harrison v. Railway Co., 7 Utah, 523, 27 Pac. 728.

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action by Mary Fowler against the Union Portland Cement Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*C. S. Varian* for appellant. ·

*Evans & Evans* for respondent.

APPELLANT'S POINTS.

Proof of defect in an appliance in itself does not give a right of recovery. It must appear affirmatively that the defect alleged was the proximate cause of the accident, and that the master was chargeable with knowledge of it. (*Moriarty v. Schwarzschild,* 133 Mo. App. 711, 112 S. W. 1034; 1 Labatt, sec. 128; *Finn v. Oregon Water Power & Ry Co.,* 93 Pac. 690; *McGrath v. St. Louis Transit Co.,* 197 Mo. 97, 94 S. W. 872.)

The rule of *res ipsa loquitur* is held by a large majority of the courts of this country not to apply in cases between master and servant. (*Klide v. Parker Distilling Co.,* 207 Mo. 480, 105 S. W. 1057.)

In this case the conflicting authorities are cited.

Since this court has, by way of *dictum* at least, declared that there may be cases between master and servant in which the rule may properly be applied, we may not be permitted to invoke the authority of the vast majority of cases imposing the limitation upon the rule.

We are satisfied with the court's statement that—"The maxim, when applicable to the facts and circumstances of a particular case, is not intended to, and does not, dispense with the necessity of establishing negligence." (*Christensen v. O. S. L. R. R. Co.,* 99 Pac. 676, 35 Utah, 137.)

"The action cannot be maintained, if after all the testimony has been put in, it remains doubtful whether the injury resulted from the cause suggested by the master, or from the cause suggested by the servant. As long as there is nothing more tangible to proceed upon them two or more conjectural theories, it is immaterial that the theory which is suggested in the interest of the servant is more probable than that which is suggested in the interest of the master." (2 Labatt, sec. 837, p. 2316; *Fritz v. Gas & Elec. Light Co.,* 18 Utah, 493-503; *Edgar v. Railroad Co.,* 32 Utah, 330, 338, 339.)

The sum of the whole matter is, that where the evidence of plaintiff is consistent with a hypothesis that the defendant is not negligent, and also with one that he is, plaintiff's proof tends to establish neither. (*Ascraft v. Davenport Locomotive Works* [Ia.], 126 N. W. 1114; *Patten v. T. P. R. R. Co.,* 179 U. S. 658-663; *Ewing v. Goode,* 78 Fed. 444; *U. S. v. Surety Co.,* 161 Fed. 151; *Searles v. Manhattan Ry. Co.,* 101 N. Y. 661; *Electric Co. v. Croning,* 166 Fed. 658; *Whitehouse v. Bryant Lumber Co.,* 97 Pac. 751; *C. & N. W. Ry. Co. v. O'Brien,* 132 Fed. 593-7.)

The master does not insure the servant against defects in or break down of his machinery and appliances. (*Delaware L. & W. R. Co. v. Royce* [C. C. A.], 176 Fed. 331-332. See, also, *McQueen v. Del. L. & W. R. Co.,* 92 N. Y. S. 585, 102 App. Div. 195, and 1 Labatt M. & S., section 136.)

The ordinary test of negligence is whether men of ordinary intelligence and prudence would have done or omitted the act in question under the particular circumstances. (*Stone v. R. R. Co.,* 35 Utah, 305-339; *Slade v. Beattie,* 186 Mass. 267, 71 N. E. 540; 1 Labatt, sec. 442, page 1254; *Deaton v. Abrams* [Wash.], 110 Pac. 615; Labatt, *supra,* 302b, 443-444; *Carnegie v. Pa. Bridge Co.,* 197 Pa. 441, 47 Atl. 355; *Kilroy v. Foss,* 161 Mass. 138, 36 N. E. 746; *Miller v. Moran Bros. Co.,* 39 Wash. 631, 81 Pac. 1089-1091.)

## RESPONDENT'S POINTS.

The record does not contain all of the evidence. Therefore this court will not review any assignment of error based upon the alleged insufficiency of the evidence. (*Carter v. Cummings-Nielsen Co.*, 34 Utah, 315; *Olsen v. C. S. L. R. R. Co.*, 24 Utah, 450; *Crooks v. Harmon*, 29 Utah, 304; *Hanaan Bros. v. Waltenspeil*, 29 Utah, 466; *Stone v. Ogden Packing Co.*, 30 Utah, 460; *Bowman v. Ogden City*, 33 Utah, 196.)

The master may be guilty of negligence in adopting a mode of work not reasonably safe, although it is in accordance with custom. (12 Current Law 713; *Vottman v. MacMullen*, 138 Ill. App. 616.)

It is not only necessary for plaintiff to establish a reasonable probability. It is not necessary to conclusively negative every other hypothesis. (*Wabash Screen Door Co. v. Black*, 126 Fed. 721; *Western Travelers' Assn. v. Holbrook*, 91 N. W. 276. See, also, 1 Greenleaf on Evidence [13th Ed.], sec. 13a; *Schopper v. Hancock Chemical Co.* [Mich.], 71 N. W. 1081; *Edgar v. Railroad Co.*, 32 Utah, 330; *Benedick v. Potts*, 88 Mo. 52, 40 Atl. 1067, 41 L. R. A. 478; *Cleave v. Parker Distilling Co.*, 207 Mo. 489, 105 S. W. 1057.)

The master is responsible for the acts of his agents and servants. (1 Thompson on Negligence, sec. 518.)

Question of contributory negligence is for the jury. (*Smith v. Ogden & N. W. R. R. Co.*, 33 Utah, 129; *Hickey v. Rio Grande W. Ry. Co.*. 29 Utah, 392; *Merril v. O. S. L. R. R. Co.*, 29 Utah, 264; *Christiansen v. C. S. R. R. Co.*, 29 Utah, 193.)

McCARTY, J.

Plaintiff brought this action to recover damages from the defendant for the death of her husband, Ira A. Fowler, which resulted from injuries received February 24, 1909, through the falling of a steel truss which he and other employees of defendant were attempting to put in place at defendant's cement plant near Devil's Slide, Morgan County, Utah.

The truss referred to weighed about 4000 pounds, and at the time of the accident was being raised by means of a derrick over and upon which was operated the ordinary block and tackle, consisting of pulleys and wire cable. The upright pole or mast of the derrick was about sixty feet high, and was held in place by guy wires. The height of the arm, or boom, of the derrick from the ground was about forty-five feet. The wire cable, which was from one-half inch to three-fourths of an inch in diameter, wound around a drum which was operated by a stationary engine on the ground. From the drum the cable ran up the mast and along the boom of the derrick connecting with a movable car or carrier and through pulleys forming a block and tackle with hook attached hanging underneath the boom to which weights were attached when being raised. The cable finally passed through a hole at the end of the boom, and was clamped with a clip. This clip, sometimes called a clamp, consisted of a U-bolt and shoe, a filler, and two burs. The burs tighten the clamp upon the cable. The derrick had been erected and the cable put in place three days before the accident. Fowler, the deceased, had worked about the plant between three and four months, but had worked with the iron workers' gang at this particular job only a few days. He was a steady, reliable workman, but not a structural iron worker. He was one of a gang of workmen who one or two days before the accident raised and put up, with the appliances mentioned, another truss, leaving two trusses on the ground. It was one of these—the second truss that was raised—that fell. The truss was raised to a height of seventeen feet, and was suspended by the wire cable, the attached end of which slipped away from its fastenings, and the truss fell to the ground, killing Fowler almost instantly.

It is alleged, among other things in the complaint "that, in order to raise said steel trusses or beams by means of the said derrick and wire cable, it was necessary to securely attach the end of said wire cable to prevent the same from breaking or slipping away; and it was the duty of defendant company at the time herein mentioned to firmly and

securely fasten the said wire cable in such a way as to prevent its breaking or pulling away while being used." It is further alleged "that the said defendant did not use due care in securing said wire cable, and negligently and carelessly failed to use ordinarily safe and suitable methods to secure the same, and negligently failed to use a suitable, adequate, or proper wire rope clip, or a sufficient number thereof, or to properly adjust and fasten the same, or to use any suitable or safe contrivances to secure said cable, and that said defendant knew, or by the exercise of ordinary care, could have known, that the said fastening was dangerous and insecure." Defendant denied that it failed to exercise ordinary care, and that it knew, or in the exercise of ordinary care could have known, that the fastening on the cable was dangerous and insecure. It alleged that the appliances used were in ordinary and general use, and that they were carefully inspected, and that defendant had no notice or knowledge of any defect, if any there was, and specially pleaded contributory negligence on the part of Fowler in unnecessarily putting himself underneath the truss and derrick.

The principal grounds upon which defendant relies for a reversal of the judgment are: (1) " Insufficiency of the evidence to justify the submission to the jury of the question of negligence on the part of the defendant; (2) that the contributory negligence of plaintiff's intestate was fully shown by the evidence, and the verdict should have been directed for defendant." .

We will first determine whether the evidence was sufficient to justify the submission of the case to the jury on the question of whether or not the defendant was negligent. The record shows that the end of the cable was fastened by one of the defendant's employees, a Mr. Wagner, who was a skilled and competent structural iron worker, in the following manner: He passed the cable through a hole in the spreader at the outer end of the boom from which the cable passed out between two angle irons horizontally fastened to the timbers which formed the boom, and, as a means of holding the cable and sustaining the weight of the truss suspended

by it, he attached a wire rope clip which rested against the spreader, the end of the rope projecting beyond the end of the boom. In order to tighten the rope clip upon the cable, an iron bolt was placed within the clip parallel with the cable, and the clip was tightened upon both cable and bolt by means of thread burs. The clip was so constructed as to receive two strands of wire cable, but could not be tightened upon a single strand; hence the bolt mentioned was used as a filler. The pull of the cable when thus fastened was through the clip direct. The cable was put in place under the direction and in the presence of Jacob F. Snyder, defendant's foreman. On this point Snyder testified in part as follows: "I remember, when Wagner was on the boom fixing the cable, I hallooed to him, and said: 'George, have you got it safe now? If you ain't, stay with it until you think you have got it safe.' He said it was all right. . . . I did not go up on the derrick to examine and see if it was secure, and did not see whether it was secure or not, only at a distance. From that distance (where he was standing) I could not see how it was fastened." He further testified: "Q. The ordinary method, then, would be, instead of using this piece of iron (referring to the bolt used as a filler), to bring the cable back and form a loop, put the other end of the cable within the rope clip, and screw it up on two ends (strands) of the cable? A. Yes, sir. Q. That you would call a good fastening? A. Yes. Q. Would you call the other fastening a secure fastening? Let the cable run straight through in this way . between the rope clip with a filler . . . without a double cable? A. I don't know as I would. Q. On the other hand, you would say, wouldn't you, Mr. Synder, that that wasn't a good way to fasten a cable on a derrick? You would not have done it that way yourself if you had done it? A. No."

We are clearly of the opinion that the testimony of Snyder alone was sufficient to warrant the court in submitting to the jury the question as to whether the slipping of the cable was due to negligence of the defendant in

failing to properly fasten the same, as alleged in the complaint. It is suggested by counsel for defendant that some latent defect in the rope clip, or clamp by which the cable was fastened, might have been the proximate cause of the falling of the truss. In the discussion of the case in their printed brief they say: "For all that appears the inference may reasonably be made that the fall of the truss may have resulted from one of several other causes, for neither of which the defendant would be liable. An innate defect in the steel filler causing it to break with the strain of the cable, or one in the U-bolt, or in one of the burs or nuts, defects not discoverable by inspection, and which would have so loosened the clamp as to loose the cable whether it had been passed back through the clamp originally or not, may have caused the accident." In answer to this suggestion it is sufficient to say that there is not a fact proved in the case from which such an inference can reasonably be drawn, while, on the other hand, the testimony of Snyder (defendant's principal witness) tends to show, and the jury might reasonably infer therefrom, that the defendant was negligent in not properly fastening the end of the cable, and that the cable slipped because of the negligent way in which it was fastened.

In the case of *Schoepper v. Hancock Chemical Co.*, 113 Mich. 582, 71 N. W. 1081, the court said:

"Defendant's counsel contends that the cause of the explosion is a matter of mere conjecture, and it is said by counsel that it is not enough for plaintiff to prove circumstances consistent with her theory, but that these circumstances, and each of them, must preclude any other rational conclusion. This we take to be but another way of stating the proposition that the proof must exclude all reasonable doubt. It is hardly necessary to say that no such rule obtains in civil cases. It is true that, where an injury occurs that cannot be accounted for and where the occasion of it rests wholly in conjecture, the case may fall for want of proof (citing *Robinson* v. *Charles Wright & Co.*, 94 Mich. 283, 53 N. W. 938; *McNamara* v. *Railway Co.*, 95 Mich. 545, 55 N. W. 440). But such cases are rare, and that rule should never be so extended as to result in a failure, or in denying an injured party of a right of action, where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than the other."

Likewise in the case of *Wabash Screen Door Co. v. Black,* 126 Fed. 721, 61 C. C. A. 639, it is said:

"Now the company insists that the proof fails to show that the pulley was defective, but, if it does, it fails to show the specific defect which caused it to burst; and, if it does this, still it does not show that Whitford (deceased) was struck by one of the flying pieces, for no one saw him hit; that for aught that appears in the record he might have been hurt by stumbling and falling into the pulley while approaching it, or by slipping and falling between the belt and pulley while oiling the idler above, in either of which events his skull might have been fractured on one side and his scalp bruised on the other. . . . Doubtless a jury ought not to be permitted to speculate in the sense of guess between causes when no reasonable explanation of the injury can be found in the testimony (citing *Patton* v. *Texas Pac. Ry. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; *Duntley* v. *Inman & Co.*, 42 Ore. 334, 70 Pac. 529, 59 L. R. A. 785; *I. C. R. R. Co.* v. *Cathey*, 70 Miss. 332, 12 South. 253). But, in the absence of direct testimony, the simple suggestion of theories by the defense does not reduce the jury to mere speculation and disqualify it from determining the cause of the injury complained of. The theories suggested may be forced and fanciful, finding no reasonable foundation in the facts proved. They may be explanations which do not explain, which the common sense of the jury, when applied to the testimony, would instantly reject."

So in this case the theory advanced by defendant that the falling of the truss might have been due to some latent defect in the clamp by which the end of the cable was fastened is not supported by any evidence in the case, but is mere conjecture only.

We now come to the assignment of error involving the question of whether Fowler, the deceased, under the evidence when considered in the light most favorable to the plaintiff, was as a matter of law guilty of contributory negligence. The evidence bearing upon this phase of the case discloses about the following state of facts: The truss was being put in place under the direction and supervision of Snyder, the defendant's foreman, who was present giving directions to Fowler and the other employees who were operating the derrick at the time the accident occurred. George Roberts, an experienced structural iron worker, had hold of a tag or guy line that was fastened to the end of the truss, which, as hereinbefore

stated was suspended about seventeen or eighteen feet above the ground. The use of the tag or guy line was to steer and guide the truss as it was being raised and placed in position.

Regarding the situation and as to what was said and done at the time of and immediately preceding the accident, Snyder, one of defendant's witnesses, testified in part as follows: "The tag line we had was too short, and Roberts had hold of it, and the truss would swing over him once in a while. I told Fowler to take a piece of line over, and tell Roberts to bend it on so he could stay out from under that thing. . . . He took the rope and handed it to Roberts, and Roberts took a step over on the truss further to tie or bend on the line, and Fowler followed him around, stepping over the truss that was lying on the ground and crossed over on the further side of it. He must have been partially under the suspended truss which dropped." Snyder further testified that he had "cautioned the men regularly about going under the heavy weights that were being hoisted," and had "told Fowler before about it." William Tame, an employee of defendant who was assisting in putting the truss in place, testified: "I could see George (Roberts) from where I was, and I heard Snyder tell Ira Fowler to get that line and take it over to George, and saw him do it. The truss fell and struck him on the head. I saw him as he fell. He and Roberts were so close together that they could touch one another." He further testified that "the rule of iron workers is to keep from under all bodies being hoisted." Roberts was called as a witness, and testified in part as follows: "I was standing under the boom like, and pulling back toward the mast, and helped to move the car along that the truss was hanging to. The rope was too short, and it was necessary to attach something more and lengthen it. Ira got the rope and came out with it to where I was standing. In order to tie the line on, we had to go out where my line came down, so I could reach it in order to tie it. Ira came out to assist me in tying the rope, and while he was there assisting me the truss fell and I jumped out of the way. . . . I barely escaped."

It thus appears that Fowler, who was not a structural iron worker, and who had had but a few days' experience as a common laborer at this kind of work, was in this situation: He had been informed by Snyder, defendant's foreman, of the danger of going under the weights as they were being raised by means of the derrick. Roberts, who was an experienced structural iron worker, was standing in the danger zone of the suspended truss holding to a tag or guy rope which was too short for the use that was being made of it. It therefore became necessary for some person to go to where Roberts was standing with a piece of rope to attach to the rope he was holding. Fowler was directed by Snyder to perform this service. True, there is some evidence tending to show that Fowler in taking the rope to Roberts was not necessarily required to go within the danger zone of the truss, but the great preponderance of the evidence is to the contrary. On this point, Snyder, defendant's principal witness, testified on cross-examination as follows: "Q. Now, therefore, when you saw that Roberts was underneath the truss you sent Ira to get the rope and to take it to George Roberts, it would be necessary for him to go where George was, wouldn't it? A. Yes, sir. Q. To take it over? A. Not necessarily under the truss. Q. I understand Roberts was under the truss? A. I will admit it was a dangerous place for him to go. Q. So that George Roberts was within the danger zone, was he not? A. Yes. Q. And it was necessary for Ira Fowler to go where George was to take the rope to him? A. Yes. Q. That is, within the danger zone? A. Yes."

The general rule is that where, as in this case, a servant is injured while performing some act in obedience to the orders of his master, he is not chargeable with contributory negligence, unless the act commanded involves danger so obvious and imminent that no reasonably prudent person in his situation and with his knowledge of the

danger would undertake it. This rule is tersely stated and
well illustrated in 26 Cyc. 1221, in the following language:

> "A servant acting under the commands or threats of his master
> does not assume the risk incident to the act commanded, unless the
> danger incurred is fully appreciated and is such that no person
> of ordinary prudence would consent to encounter it; and the mere
> fact that the servant knows there is some danger will not defeat
> his right to recover if in obeying he has acted with ordinary care
> under the circumstances."

In 1 Labatt, section 439, the author says:

> "If a danger is not so absolute and imminent that injury must
> almost necessarily result from obedience to an order, and the serv-
> ant obeys, the master will not afterwards be allowed to defend
> himself on the ground that the servant ought not to have obeyed the
> order." And again: "It does not follow that because disobedience
> to the order would be justifiable the servant was guilty of negli-
> gence in obeying it."

(Shearman & Redfield, Neg. [5th Ed.], section 186; 20
Am. & Eng. Ency. L. [2d Ed.], 147; *Harrison v. Railway
Co.*, 7 Utah, 523, 27 Pac. 728.) Tested by the rule as de-
clared by these authorities, and many others that could be
cited, we are clearly of the opinion that the facts and cir-
cumstances of this case, as disclosed by the record, would
not justify a court in directing a verdict for the defendant.
Under the circumstances all that the defendant could prop-
erly demand was that the question of contributory negli-
gence be submitted to the jury under proper instructions
from the court. And, the court having done this, the de-
fendant is not in a position to complain.

The judgment is affirmed, with costs to respondent.

FRICK, C. J., and STRAUP, J., concur.