## BAKKA v. KEMMERER COAL CO.

No. 2451.  Decided August 5, 1913 (134 Pac. 888).

1. MINES AND MINERALS—OPERATION OF MINES—STATUTE.  Comp.
St. Wyo. 1910, sec. 3511, requiring an operator of a coal mine
to employ an expert mine boss who shall inspect the mines
and see that all loose coal, slate, and rock is carefuly propped
and secured against falling, and giving a right of action in
favor of a person injured against the party at fault, is not
repugnant to the Wyoming Constitution.  (Page 354.)

2. MASTER AND SERVANT — FELLOW SERVANTS—VICE PRINCIPAL—
MINES.  Under Comp. St. Wyo. 1910, sec. 3511, requiring an
operator of a coal mine to employ an expert mine boss to in-
spect the mines and see that all loose coal, slate, and rock is
carefully propped and secured against falling, the duties im-
posed upon the mine boss are masters' duties as to which he
and a miner employed therein are not fellow servants.  (Page
354.)

3. MASTER AND SERVANT — FELLOW SERVANT — PERFORMANCE OF
DUTIES OF MASTER.  Independently of statute, one intrusted by
the master with duties of inspection and of providing and main-
taining a reasonably safe place to work is a vice principal
and not a fellow servant with an employee not himself engaged
in the performance of such duties.  (Page 354.)

4. MASTER AND SERVANT—RISKS ASSUMED BY SERVANT—STATUTORY
PROVISIONS.  Comp. St. Wyo. 1910, sec. 3511, requiring an
operator of a coal mine to employ an expert mine boss to
inspect the mines and see that all loose coal, slate, and rock
is carefully propped and secured against falling and to see
that no person is permitted to work in an unsafe place unless
for the purpose of making it safe, does not abrogate the de-
fense of assumption of risk as to the usual ordinary risks
incident to the employment but does abrogate such defense as
to risks of the master's breaches or violations of the specific
duties imposed on him by the statute.  (Page 355.)

5. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK
—SUFFICIENCY OF EVIDENCE.  Evidence, in an action by a miner
injured by loose coal falling upon him while removing loose
dirt, rock, and gob from an entry, held sufficient to show that
plaintiff assumed the risk.  (Page 356.)

6. MASTER AND SERVANT—RISKS ASSUMED BY SERVANT—INSTRUC-
TIONS.  In an action for injury to a miner caused by falling
coal, a charge that, where a servant is injured in performance

of an act in obedience to the master's orders, he is not charge-able with contributory negligence unless the act involves danger so obvious that no reasonably prudent person would undertake it, and that a servant acting under the command of the master does not assume the risk unless the danger was so obvious that a man of ordinary prudence, with the same knowledge and experience as plaintiff, under similar conditions, would not have taken the risk of such injury, was erroneous, because the test of assumption of risk was not stated to be knowledge, actual or presumptive, of the danger and the appreciation of it but whether one of ordinary care, with the knowledge and experience possessed by the injured person would have taken the risk of the injury.   (Page 359.)

7. MASTER AND SERVANT—INJURY TO SERVANT—ERRONEOUS CHARGE. The charge was further objectionable because it confused assumption of risk and contributory negligence.   (Page 359.)

8. TRIAL—INSTRUCTIONS—SUPPORT IN EVIDENCE.   Where, in an action by a miner for an injury in a coal mine, there was no evidence that plaintiff was directed to do any particular act but was merely directed by the mine boss to work at a particular place, it was error to charge that a servant, acting under the direct commands of the master, does not assume the risks incident to the act commanded to be done, unless the danger is appreciated by him, and was such that no person of ordinary prudence would encounter it.[1]   (Page 359.)

9. DAMAGES — INJURY TO SERVANT — ADMISSIBILITY OF EVIDENCE. Where, in an action by a miner for an injury in a coal mine, the complaint alleged that, prior to the injury, plaintiff was a stout, able-bodied man but since the injury had been wholly incapacitated for manual labor, though forced to do so in order to support his large family, consisting of a wife and six small children dependent upon him, it was error to admit evidence as to plaintiff's large family, since it had no legal relevancy as showing ability to labor.   (Page 360.)

10. DAMAGES—INJURY TO SERVANT—ISSUES—MATERIALITY.   Because the complaint alleged that plaintiff had a wife and small children, and the general issue was pleaded, did not make a material issue, since the allegation in the complaint was not essential. (Page 361.)

11. DAMAGES—PERSONAL INJURY — ISSUES — ADMISSIBILITY OF EVI-DENCE.   Where, in an action by a miner for an injury in a coal mine, plaintiff alleged that an injury to his back and legs was caused by such injury in the mine, it was error to exclude evidence of other injuries to his back received subsequent to such injury in the mine, though such other injuries were not pleaded by defendant.   (Page 361.)

[1] Fowler v. Union Portland Cement Co., 39 Utah, 363, 117 Pac. 462.

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by Elias Bakka against the Kemmerer Coal Company.

Judgment for plaintiff; defendant appeals.

REVERSED AND REMANDED.

*M. E. Wilson, J. R. Arnold* and *S. T. Corn* for appellant.

*Willis & Devine* and *Ralph Smith* for respondent.

### APPELLANT'S POINTS.

While under the general rule it is the duty of the master to use ordinary care to furnish a reasonably safe place to work, and while this duty cannot be delegated, in mining one of the necessary incidents of the employment of the servant is the making of the place in which he works, and any danger arising from the work as it progresses caused by changing conditions or in making dangerous places safe is assumed by the employee. (*Dunn v. Short Line,* 28 Utah, 478; *Christensen v. R. G. W. R. R. Co.,* 27 U., 132; *Allen v. Logan City,* 10 Utah, 279; *Davis v. Min. Co.,* 116 Fed. 122; *Colo. Coal & Iron Co. v. Lamb,* 40 Pac., 251; *Thurman v. Min. Co.,* 108 Pac., 588. *Metalic Min. Co. v. Watson,* 117 Pac., 610; *Smith v. Hecla Min. Co.,* 80 Pac., 780; *Finalyson v. Mining Co.,* 67 Fed., 507; *Petaja v. Aurora Iron & Min. Co.,* 106, Mich., 469; 32 L. R. A., 436; 66 N. W. 951.)

STRAUP, J.

The plaintiff, an employee of the defendant, brought this action in the district court at Ogden to recover damages for alleged injuries sustained by him in the defendant's coal mine at Frontier, Wyo. His complaint is in two counts: One based on a Wyoming statute; the other on the common law.

As pleaded, the Wyoming statute (C. L. 1910, ch. 224) provides: Section 3511 that one operating a coal mine is required to employ "a mining boss who shall be an expert coal miner and shall have taken and passed the examination" and "received a certificate of competency." and who, among other duties, "shall see that as the miners advance their excavations, all loose coal, slate and rock overhead are carefully secured against falling on the traveling ways, and that sufficient props, caps and timbers are furnished upon order of the miner, of suitable size," etc.; section 3514 that "the mining boss, or his assistant, shall visit and examine every working place in the mine at least once every alternate day, while the miners of such place, are, or should be, at work, and shall direct that each and every working place is properly secured by props or timber, and that safety in all respect is assured, and that no person shall be permitted to work in an unsafe place, unless it be for the purpose of making it safe"; 3526 that "for any injury to person or property occasioned by any violation of this chapter, or any willful failure to comply with its provisions, a right of action against the party at fault shall accrue to the party injured for the direct damages sustained thereby: . . . Provided, that nothing in this section shall be so construed as to prevent the recovery of any lawful damages against the person or company operating mines if said company should be found in fault or shall have contributed to any accident by means of carelessness on their part."

In the first count is alleged:

(1) A failure to employ a competent mine boss and one who had passed an examination and had a certificate of competency as by the statute required; (2) failure to see that overhead loose coal, slate, and rock along a traveled way at the place of the accident had been secured against falling; (3) failure of the mine boss to visit and examine the underground workings where the accident happened; (4) failure to timber the place; (5) permitting the plaintiff to work at a dangerous and unsafe place, alleging the defendant had, but the plaintiff had not, knowledge or notice of the danger, and

that the work performed by him "was not for the purpose of making the place safe"; (6) that the mine boss directed the plaintiff to underground workings along an entry, particularly described, to clean up and load on cars dirt and rock in the entry, and that, in the prosecution of such work, coal and rock "fell from the roof or rib" of the entry, striking the plaintiff on the back and "dislocated his spine."

In the second count it is alleged that independently of the statute it was the duty of the defendant to furnish the plaintiff a safe place to work, to take down all loose, overhanging coal, rock, and slate along "traveled ways" in its mine, and to properly brace and timber them; that those duties had not been discharged; and that the defendant negligently suffered and permitted loose, overhanging coal and rock, unprotected and unsupported, to project and hang from the roof or rib of the entry where the plaintiff was directed to clean it up, by reason of which, and while he was loading dirt and rock on cars, the loose coal and rock fell from the roof or rib of the entry and injured him as in the first count alleged.

The defendant pleaded the Wyoming statute at length and parts of the Wyoming Constitution with which, as alleged, the statute was in conflict and hence was void. It denied the charged negligence of both counts and that the injury was the result thereof, and averred that the work performed by the plaintiff was in the discharge of duties and services making the place safe. It further pleaded, in defense of both counts, assumption of risk, negligence of fellow servants, and contributory negligence.

The case was tried to the court and jury and resulted in a verdict for the plaintiff. The defendant appeals, with an assignment of over one hundred alleged errors raising about every question pertaining to the law of negligence. They involve the validity of the Wyoming statute, its construction and application, assumption of risk, negligence of fellow servants, contributory negligence, sufficiency of the evidence, portions of the charge, rulings relating to the admission and exclusion of evidence, and misconduct of counsel.

The evidence with respect to the accident shows:

The defendant was operating a coal mine at or near Frontier, Wyo. The plaintiff had been in its employ for more than two years. He is a Finlander and at the time of the accident was about forty-five years of age and had been in this country twenty-three years and for that length of time had been an experienced coal miner and had done all kinds of work in a coal mine. He was familiar with all parts of the defendant's mine and there worked at digging coal, putting up brattices, cleaning up entries, performing services as a powder man, and had done and knew how to do all kinds of work about a coal mine. The defendant's mine had two openings or slopes. Entries and tunnels were prosecuted from them, one where the accident happened, called the ninth north entry or tunnel, which at the time was being extended from the ninth entry. That work by blasting and digging was done by miners on a yardage and tonnage basis. The coal extracted was loaded on cars operated on a small track in the entry and hauled to the surface. The rock and dirt (the waste) was by the miners thrown to one side between the tracks and the wall or rib of the entry. The roof along the entry at the place of the accident was slanting. On one (the north) side the height from the floor to the roof of the entry was about seven feet; on the south it was less. The wall or rib on the north side was also slanting; the entry being wider at the bottom or floor than at the top or roof.

The dirt and rock referred to by the witnesses as debris, or "gob," and thrown by the miners between the track and the north wall, extended on a slope from the track to the roof on the north side or wall, as testified to by some witnesses, and within a foot or two, as testified to by others. Witnesses testified that about fifty feet from the face of the entry at the top of the north wall or rib and near the roof (about in the corner of the roof and the top of the north wall) they (some of them for a week, others for two weeks) noticed a lump of loose coal projecting and hanging from the rib but said nothing to the plaintiff about it, nor to the mine boss, nor made any report whatever of it. Others testified

that the gob extended so close to the roof at the rib that the coal which fell was not observable until the gob was removed.

On the morning of the day of the accident the plaintiff and another, Charles Budzicki, spoken of as day men (company's men) were sent by the assistant boss to clean up the entry and to shovel and load the gob on cars and haul it out. They began work about thirty or forty feet from the face of the entry and worked out from the face. They worked there all the forenoon and loaded and hauled out four or five car loads.    In the afternoon about one-thirty o'clock, they reached the place of the projecting coal.   There they removed and loaded the gob within about two feet of the floor of the entry.    While engaged in loading gob at that place, a chunk of coal, variously estimated by the witnesses from two to five feet long, ten inches to a foot wide, eight inches to a foot thick, weighing from fifty to one hundred and fifty pounds, fell from or near the top of the north rib (near the corner of the roof and the rib) and struck the plaintiff on the back and legs.   With respect to this several propositions are established:   The slanting north wall or rib was coal with seams of clay and "bones"; the roof and underground workings along the entry were of such character as not to require timbering or support; whether the gob extended to the roof, or within two feet of it, no one was in danger of the hanging or projecting coal until the gob was taken away; and no prop or support could have been placed there to support the loose coal until the gob had been removed.   Here arises a crucial question widely dividing the parties.   On behalf of the plaintiff it is contended that it was the duty of the mine boss, a vice principal, to see that all loose coal and rock was removed from the roof and rib along the entry before the plaintiff was sent in it to remove and load the gob; by the defendant that the plaintiff and his companion were sent to the entry for that very purpose, to take out the gob, take down all loose coal and rock, to clean up the entry, and hence were engaged in making the place safe. With respect to this and the questions of assumption of risk and contributory negligence, the plaintiff testified that

he was sent in the entry to load the gob, clean up the entry, and to put it in shape. He testified that before the coal fell he saw it projecting and hanging from the top of the rib but did not know it was loose and did nothing to ascertain whether it was loose, though it was but a foot or two above his head and easily reached. He further testified that he knew how "to sound" for loose coal and rock and had frequently done that and taken down coal and rock found to be loose; but in this particular instance he made no "soundings" and did nothing to ascertain whether the projecting and hanging coal was loose because the shovel, the only tool he had, was not suitable to make soundings, and because the assistant boss, when he directed the plaintiff to the entry, had not given him specific orders and directions to there take down loose coal, and that he did only what he had specific and direct orders to do. At one place in his testimony he stated that he woul not have taken down the coal though he had known it was loose, because he had no specific and direct orders to there take down loose coal; at another, had he known it was loose, he would have taken it down only to save his life or to prevent bodily injury to himself; and at still another, if he had known the coal was loose, he would not have stood or gone under it.

Plaintiff's companion testified that the coal fell from about the corner of the roof and rib; "it stuck on the rib, stuck a little on top, on the roof and on the rib;" that the gob extended to the roof, nearly touched the roof, and covered or hid the coal which was not observable, and did not fall until the gob had been removed; and that the coal fell about one hour after the gob had been taken away by them.

With respect to the defendant's charged negligence, the court submitted the case to the jury on both counts, except as to the alleged negligence of an incompetent mine boss and one not having a certificate of competency as by the statute required. That issue was withheld for want of evidence. The court also, as to both counts, withheld from the jury all questions of negligence of a fellow servant. It submitted the question of contributory negligence as to both counts. · It

withheld the question of assumption of risk as to the first count, holding in that respect that the defense of assumption of risk was abrogated by the statute; it submitted such question as to the second count. In that particular the court charged (No. 19):

"To maintain the defense of assumption of risk you must find by a fair preponderance of the evidence that the dangers of the plaintiff's getting injured were open and apparent and known to him; that is, that the danger of getting injured in the manner and from the cause that he was injured was so open, obvious and apparent that a man of ordinary care and prudence, with the same knowledge and experience as plaintiff has, surrounded by similar conditions, would not have taken the chance or risk of such injury. In determining this question, as well as all the other acts of the plaintiff, you must decide it by the standard of what an ordinarily careful and prudent man of similar knowledge and experience and under similar conditions and surroundings would do."

The court also charged (No. 21):

"You are instructed that, where a servant is injured in the performance of some act in obedience to orders of the master, he is not chargeable with contributory negligence unless the act commanded involves danger so obvious and so imminent that no reasonably prudent person, in his situation and with the knowledge of the danger, would undertake it, and you are further instructed that a servant, acting under the commands of a master, does not assume the risk incident to the act commanded to be done, unless the danger incurred is fully appreciated by him and is such that no person of ordinary prudence would consent to encounter it; and the mere fact that the servant might know that there was some danger will not defeat his right to recover, if, in obeying the master in the performance of his work, the servant acts with ordinary care under the circumstances. In other words, if the danger is not so absolute and so imminent that injury must almost necessarily result from obedience to the master's commands, and the servant obeys, the master will not after-

43 Utah 23

wards be allowed to defend himself on the ground that the servant ought not to have obeyed the order."

We do not see anything in the statute which renders it invalid. It has been in force in Wyoming for twenty years. We have not been advised that its validity has ever been questioned by the courts of that state.

It is claimed the plaintiff and the mine boss and the assistant mine boss were fellow servants; and hence the negligence, if any, causing the injury was that of a fellow servant. Of course the determination of that question is dependent upon and controlled by the established doctrine of Wyoming, as fixed by statute, or otherwise as promulgated by the courts of that state. We have not been referred to any case where the Wyoming statute in such particular has been construed or considered by the Wyoming courts. It is unnecessary to this decision to determine whether the defense of negligence of a fellow servant has been entirely abrogated by that statute. In the absence of a construction of the statute by the Wyoming courts, we are of the opinion that, under such statute, the plaintiff and the mine boss, or the assistant mine boss, with respect to the particular duties imposed on the mine boss by sections 3511 and 3514, are not fellow servants. We think the statute made these duties masters' duties. That is as far as we need go.

Nor, in our judgment, was the defendant entitled to go to the jury, as to such issue, on the second count. Again we have not been referred to any decision of the Wyoming courts where, independently of a statute, one intrusted by the master with duties of inspection and of providing and maintaining a reasonably safe place to work was held to be not a vice principal but a fellow servant, with an employee not himself engaged in the performance of such duties or of services making a place safe. Such a person as to such an employee is, we think, a vice principal and not a fellow servant. We therefore think the ruling was right withholding such issue from the jury.

As to assumption of risk, the plaintiff contends that the statute entirely abrogated that defense, and hence the court

properly refused to submit such issue as to the first count. The defendant contends that such defense was not abrogated by the statute, and that the evidence conclusively shows assumption of risk, and that the defendant on that as well as other grounds was entitled to a directed **4** verdict in its favor and in the absence of that was entitled to go to the jury on such issue as to both counts, and that the court on the submission of the question as to the second count gave the jury wrong principles to the defendant's prejudice.

In the case of *Maki v. Union Pacific Coal Co.,* 187 Fed. 389, 109 C. C. A. 221, where this very statute was considered, the Circuit Court of Appeals, Eighth Circuit, held that the defense of assumption of risk was not abrogated but "is still available to the master." We are also cited to a decision of the Wyoming court (*Carney Coal Co., v. Benedict* [Wyo.] 129 Pac. 1024) where it is claimed the same result was reached by that court. In the latter the plaintiff, an employee in an action against his employer, was denied recovery on the ground of assumption of risk. But it is not made to appear that the action was based on the statute. It appears to be founded solely on the common law independently of the statute; and hence the statute was not presented to nor considered by the court. We think that case can hardly be regarded as determining the effect and meaning of the statute in this particular or as giving it the same construction as was given it by the Maki Case. We have been referred to no other case from the Wyoming courts construing the statute in such particular. In the absence of a construction of the statute by that court, we are of the opinion that the defense of assumption of risk was not entirely abrogated by that statute; but we are not prepared to go to the extent of the Maki Case, which, in effect, holds that, notwithstanding the statute, the servant nevertheless not only assumes all the usual and ordinary risks incident to the employment, but also the risk of the effect of the master's negligence with respect to breaches and violations of positive statutory duties imposed on the master, and of which breaches and violations

the servant has actual or presumptive knowledge. We think the statute has not abrogated the defense as to the usual and ordinary risks incident to the employment and as to obvious dangers incident to services in rendering a place safe and suitable. But we think it has impliedly abrogated such defense as to risks of the master's breaches or violations of specific duties imposed on him by sections 3511 and 3514. To hold otherwise is, in the language of the Pennsylvania court, to render the statute "a dead letter." (*Jones v. Am. Caramel Co.*, 225 Pa. 644. 74 Atl. 613; *Valjago v. Carnegie Steel Co.*, 226 Pa. 514, 75 Atl. 728.; notes to case of *Poli v. Numa Block Coal Co.*, 33 L. R. A. (N. S.) 646.)

This brings us to the particular facts in hand. There is no evidence to show any breach of the defendant's duty to furnish props or timbers. The evidence shows that the place where the coal fell could not be timbered or supported, were it thought necessary or desirable to do that, until the gob was removed, and that the underground workings along the entry were of such character as not to require timbering to render the place reasonably safe. The roof itself was in good condition and free from loose or overhanging coal or other substance. The coal which fell did not fall from the roof and "on a traveling way." True, it fell in an entry, but in one which was being extended, and at a place where the prosecution of such extension was going on. The coal broken down by the miners had been removed; but the dirt and rock (the gob) resulting from such extension and temporarily thrown and piled by the miners to one side still remained. The gob, piled as it was at the place of the accident, extended nearly to or within a foot or two of the roof. The coal fell from near the top of the rib. So the plaintiff himself testified. If the gob extended to, or nearly to, the roof, as testified to by plaintiff's co-worker and others, the gob covered and held the loose coal until the gob was removed; if it extended within a foot or two of the roof, as testified to by others, and though the loose coal was not covered nor supported by the gob, still, so long as the gob remained, the coal sloughing off would have fallen but a

foot or two and on the gob.  And so, in either event, no one
was in danger of the loose coal until the gob was removed.
Now the plaintiff was sent to the entry to remove the gob,
to clean up the entry, and to put it in shape.  There is no
dispute as to that.  Different contentions, of course, are
made as to just what the plaintiff in such particular was re-
quired to do; by the defendant that he was required not only
to shovel up the gob but also to take down whatever loose
coal, dirt, and rock might be found to put the entry in shape;
by the plaintiff that all he was required to do was to shovel
up the gob and not to take down anything.  As to this we, of
course, look to that portion of the evidence most favorable
to the plaintiff.  His own testimony, in our judgment, does
not support his claim.  He did not deny that cleaning up the
entry and putting it in shape did not include taking down
loose rock, dirt, and coal.  He admitted such work had there-
tofore been done by him but testified that on this particular
occasion it was not his "business," by which he meant not his
duty, to take down loose dirt, rock, or coal from either the
wall or roof because he was not, when sent to the entry, given
direct and specific directions ("specific orders") to do so,
and that, except to save his life or to prevent bodily harm to
himself, he did nothing without specific and direct orders.
As already shown, when the plaintiff went to work in the
entry, so long as the gob remained he was not exposed to
danger.  While the prosecution of his work did not cause
the coal to become loose, nevertheless it was the changed con-
dition of the premises, brought about and created by himself
in the prosecution of the work (removing the gob), that ex-
posed him to danger of the loose coal.  He saw it and looked
at it before it fell.  True, he repeatedly said in his testimony
he did not know it was loose; but he was a miner of many
years' experience, had done all kinds of work in a coal mine,
knew how to make and frequently had made "soundings" to
ascertain loose rock, coal, and other substance and to take,
and frequently had taken, down such as found to be loose.
He here made no "soundings" and did nothing to ascertain
whether the lump of coal he saw projecting and hanging

from the rib was loose, though it was but a foot, or little more, above his head, because, as testified to by him, he had no specific orders to there make soundings, and because the shovel, the only tool he had, was not suitable for such purpose. On the record, we do not think either reason sufficient to relieve the plaintiff of the charge of assumption of risk, whether viewed from the standpoint of the statute or independently of it. He was not working along a "traveling way," at a place where the statute had imposed duties on the master (his mine boss) to see that "loose coal, slate, and rock overhead are carefully secured against falling on the traveling ways," and where the plaintiff had the right to assume the roof and walls were free from overhanging loose coal and other substance. He was in the performance of work cleaning and shaping up the entry for a "traveling way," putting the place in condition for use and travel. The work performed by him related to and was a part of the prosecution of the extension of the entry; the miners making the excavation and removing the coal, the plaintiff and his companion removing the gob thrown to one side by them. The plaintiff, a practical miner of twenty-three years' experience, going to such a place thirty or fifty feet from the face of the entry and finding the gob piled up to one side nearly to the roof, covering the wall or rib, could not there assume that the projecting and hanging coal from the rib as the gob was removed, or projecting and hanging a foot or two above the gob, was not loose, pay no attention to it, wait for the boys to come around to give him specific orders to see if it was loose and take it down, remove the gob sufficiently to stand, and then stand, under the projecting coal plainly seen by him but a foot or two above his head and do nothing to ascertain whether it was loose and successfully defend himself against the charge of assumption of risk. As well say that, if in removing the gob he had found a lump of coal but four feet from the floor of the entry projecting and hanging from the wall, he would not be required to do anything to ascertain if it was loose, could disregard it and wait until the mine boss came around and gave specific orders to take it down, go on

about his work and pay no attention to it, and if it fell and injured his foot or ankle could defend against the charge on the same grounds as are here urged. On the record we think the defendant was entitled to a directed verdict in its favor on the ground of assumption of risk. As the case must be remanded for a new trial, it is proper to notice other assignments.

Paragraph No. 19, heretofore set forth and relating to assumption of risk, is erroneous in that the test of assumption of risk is not stated to be knowledge, either actual or presumptive, of the danger and the appreciation of it but whether one of ordinary care, with the knowledge and experience possessed by the injured person, "would have taken the chance or risk of injury." That but means if a servant in the exercise of ordinary care chooses to take "the chance or risk of injury" he does not assume the risk.

It is further objectionable because of a confusion and commingling of assumption of risk and contributory negligence.

Paragraph 21 is improper because inapplicable. It is taken from the authorities cited in the case of *Fowler v. Union Portland Cement Co.*, 39 Utah, 363, 117 Pac. 462. The rule as stated was proper and applicable to that case, one where the deceased, an employee, was directed by a vice principal to take a rope to another employee, the doing of which necessarily involved and exposed the deceased to danger. It was the doing of a particular and dangerous act or thing at the direct command or order of the master. Nothing of that appears here. The plaintiff was not directed or ordered to do any particular act or to do it in a particular manner. He merely, on the morning of the day of the accident at the office of the mine boss, was directed to a place in the mine near the face of the entry to load the gob, clean up the entry, and put it in shape. The direction was but an assignment to him of particular work at a designated place. The cases in this particular are about as divergent as two cases can well be. The charge was harmful, for it gave the jury to understand that, since the master

directed the plaintiff to do work at the designated place, the questions of assumption of risk and plaintiff's knowledge and appreciation of the danger were of little or no importance and no defense unless, in the language of the charge, "the danger was so absolute and so imminent that injury must almost necessarily result."

The plaintiff, over the defendant's objections, was permitted to show that he had a wife, and six children from two and one-half to sixteen years of age. Complaint is made of this. It is defended on the ground that such matters were alleged in the complaint and denied in the answer. The allegations in the complaint are that prior to the injuries "the plaintiff was a stout and able-bodied man, capable of earning $3.40 a day, but since the infliction of the injuries (dislocation of the spine and otherwise bruised and injured) upon him he has been wholly incapacitated for the performance of manual labor, though forced to do so in order to support himself and his family, consisting of a wife and six children, all of whom are wholly dependent upon plaintiff." Thus it is argued an issue (a material issue) was made of this, and that evidence with respect to it was proper to explain why the plaintiff with his alleged injuries engaged in as laborious work after as before the injuries. The evidence without conflict shows that within four or eight weeks (it is in conflict as to time) the plaintiff resumed work at the defendant's mine, first doing light then heavy work, and that thereafter he worked for two other coal companies at digging coal, timbering, and laying tracks, in the performance of which he lifted and carried heavy timbers and rails, and earned $3.40 per day, and quit work with the last company because he demanded and was refused an increase of wages. We think the evidence complained of was improperly received. It had no legal relevancy to prove what was claimed for it. The character and extent of the injury and plaintiff's ability to labor and produce were in question. As bearing on that it was proper to show the kind of manual labor performed by him before and after the injury. But proof that plaintiff had a wife and children had

no legal relevancy to rebut the inference that he was not hurt as seriously as claimed by him, arising from the proven facts that after the accident he performed hard manual labor, digging coal, timbering, and laying tracks. The necessity under or purpose for which he did that work does not touch upon or render improbable his ability to do it nor render probable his disability or partial disability. His injuries and his ability or disability to labor were the same whether he had no family or a large family. Nor was the evidence material.

Surely it was not material because, as urged by the respondent, the allegations in such respect were denied. Were the allegations essential to plaintiff's claim, or did they have such a relation to the question in controversy that they may or ought to have some influence in the determination of the cause? They had no such relation, and hence the evidence had none. We think the ruling erroneous and prejudicial. 7 Ency. Ev. 437, and cases there cited.

The plaintiff testified as to his injuries and the seriousness of them caused by the coal falling and striking him on the back. On cross-examination he was asked if he had not subsequently received a serious injury by a mule kicking him in the back, and if at another time he was not thrown out of a wagon in the mountains and seriously injured in the back. Plaintiff's objections to this were sustained on the ground that such injuries were not pleaded by the defendant. The defendant called the physician who had treated the plaintiff for the alleged injuries and, without objections, showed by him that the plaintiff was not seriously or permanently injuries; that he had sustained no injury to the spine or vertebræ; and that his injuries consisted mainly of muscular bruises in the back and leg. The defendant offered then to show by the physician that, after plaintiff's recovery and resumption of work, he again applied to him for treatment for another injury which, as stated by the plaintiff to the physician, was received by him from a kick in the back by a mule, and that upon an examination the physician saw indications of the kick and found an injury

to the back and vertebræ where plaintiff claimed he was injured by the coal striking him. This offer was also refused on the ground that such injury was not pleaded by the defendant. We think the rulings erroneous. The plaintiff alleged and adduced evidence tending to support the allegation that his injury and condition were due solely to the coal striking him. The proffered evidence tended to disprove that and hence was competent under the general issue. It was not affirmative matter requiring a special plea.

The judgment of the court below is reversed, and the case remanded for a new trial. Costs to appellant.

McCARTY, C. J., concurs.

FRICK, J.

I concur. I think, however, that the appellant was also prejudiced by the misconduct of counsel for the respondent in his argument to the jury relative to the conduct of appellant in producing a certain witness. The criticisms of counsel for respondent in that regard were not only not justified by any act or omission on the part of appellant or its counsel, but they were highly improper and in my judgment were very prejudicial. It may be that, standing alone, the misconduct might not be sufficient to require a reversal of the judgment, yet, in view that the cause must be remanded for a new trial upon other grounds, counsel should be admonished against such practices, and the district court should be directed not to pass them by without reproof and without cautioning the jury not to be influenced thereby.