JOHN RATHJEN, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY ET AL., APPELLANTS.

FILED JANUARY 20, 1910. No. 15,861.

1. **Master and Servant:** INJURY TO SERVANT: APPEAL: CONFLICTING EVIDENCE. Since the liability of the defendant in this case rests primarily upon the question of whether or not a certain command was given by a foreman to a servant, and as to this there is a direct conflict in the evidence which has been submitted to the jury under proper instructions, this court must consider as settled by the verdict that the command was given by the foreman as plaintiff alleges.

2. ———: ———: PROXIMATE CAUSE: ASSUMPTION OF RISKS. The plaintiff, with a gang of other laborers, was engaged under the direction of a foreman in removing rails from a railroad track. The method followed was to remove the spikes upon the inside of the rail, then push or pry the rail in, and, if it had become wedged at the joint by expansion, to attempt to drive the end loose with a sledge-hammer, and, if not loosened in this manner, to push the rails in with a lever at the next joint. The undisputed evidence shows that while loosening the rails, if they had become wedged, the inside of the track is a dangerous position. The plaintiff, in ignorance that the rails were wedged, in obedience to a command of the foreman, stepped inside the rail to pry or lift the rail with a crowbar. Another workman had been directed to pry the rail at the joint. As he proceeded to do this, the rail sprang, striking plaintiff, and others, and severely injuring him. *Held*, (a) That the proximate cause of the injury was the negligent command to the plaintiff to place him-

self in a position which was known, or ought to have been known, to the foreman as one of danger on account of the wedging of the rail, a fact which the foreman knew, and of which the plaintiff was ignorant; (b) that the risk was not one of the ordinary incidents of employment assumed by the plaintiff.

3. ————: ————: INSTRUCTIONS. Since, under the issues, the liability of the railroad company is based solely upon the command given by the codefendant foreman, Olson, an instruction which directed the jury "that, if you find in favor of the plaintiff, you must find against both defendants, as you cannot find against one defendant and in favor of the other" is correct.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE.  *Affirmed.*

*Greene, Breckenridge & Matters,* for appellants.

*Smyth & Smith, contra.*

LETTON, J.

In June, 1906, the plaintiff, who was a track-laborer or section-hand in the employ of the defendant railway company, was engaged in the work of substituting new rails for old upon the west side of the main-line track of the railway extending between Omaha and Gibson. The work was under the general direction of one Ibson, who was roadmaster for that division, under whom were three section foremen, Olson, who is one of the defendants, Peters and Shimonek. The gangs ordinarily working under each foreman were assembled and worked together under the immediate direction of the three foremen and Ibson. Traffic had been stopped upon that section of track for the purpose of allowing the rails to be changed. The men began work at the Omaha end, and proceeded to draw the spikes upon the inside of the west rail going south until they reached Gibson, when they walked back toward the point of beginning for the purpose of moving the rails. Immediately before the accident Olson, with a helper, had cut the bolts from the angle-bars holding the north end of the first rail to be changed. The rail, ap-

parently on account of heat, had expanded so that its end was tightly wedged against the end of the next rail to the north. This point was near the end of a bridge, and there were guard-rails about a foot inside of the main rails opposite the joint. Olson struck the end of the rail with a maul or sledge-hammer two or three times endeavoring to drive it in, but failed to loosen it. Ibson was standing within a few feet from him at this time, both standing on the outside of the rail. So far the evidence is undisputed. Just at this moment the plaintiff came from the south where he had been pulling spikes. He states that a number of men were on the outside trying to push the rail out; and that, when he reached a point about the center of the rail which Olson had been trying to loosen, he heard Ibson say: "Hurry up, get this rail out," and that Olson said, "Some one get in and lift it up inside." That he immediately jumped inside, put a crowbar he was carrying under the rail, and just as he put his bar down the rail sprang in his direction, knocking him down and inflicting serious and permanent injuries. Another witness, named Fronk, testified that he came upon the scene about the time that Olson was cutting the bolts to the angle-bars; that after this Ibson said, "Throw her out, boys," and that some one, either Olson or Ibson, called out, "Some one get in there and lift or pry it out"; that Rathjen stepped inside to pry it out; that he took his bar and tapped the rail, and, as he tapped it, it flew out. On the other hand, Olson and Ibson both deny ordering any one to go inside. They testify that, when they found the rail was wedged, Olson told one Simpson, who was helping him to cut the bolts, to go to the next joint south and pry or push the rails in at that point. Olson says that, as Simpson started to the joint, Rathjen stepped inside, with his clawbar resting on the guard-rail pointed toward the west rail; that he told him to keep his bar out of there, "but just about the time I said, 'Look out for the bar there,' I seen the rail was moving and I jumped up, but came down too

quick." He was struck on the foot by the springing rail, bruising his instep, and breaking his toe. Ibson also testified that Olson or one of his men tried to knock the rail in with the sledge, and that he, Ibson, said, "Get some one with a bar to go to the joint ahead and shove it in, and it will come out here"; that he then stepped between the two guard-rails, and almost immediately was struck across both feet with the rail springing over the guard-rail. He did not hear Olson tell Rathjen "to get the bar out of there," nor hear Olson give any other orders than to the man to go up and shove the rail in. Both he and Olson testify that the guard-rail would have prevented the springing rail from striking them if Rathjen's bar had not been there for the rail to slide upon over the guard-rail. Ibson says: "If there was no bar in here it would be impossible for the rail to get over this guard-rail, as it would hit the guard-rail, but with a bar in here I would not have stood there for all the Burlington road." The testimony clearly shows that when a rail becomes tightly wedged against another by reason of expansion, whether caused by heat or other causes, it is apt to spring a distance of from a few inches to four or five feet when released. It is shown that both Olson and Ibson were aware of the danger from springing rails, and knew that this rail was wedged; while Rathjen testifies that he did not see the joint, and was not aware that this rail was wedged, but thought it might have been imbedded in the ties or held by a broken spike. The jury found for the plaintiff against both defendants.

The defendants first contend "that there is no evidence that by reason of intense heat the rail had expanded, and had become tightly wedged." It seems to us that one cannot read the testimony of Ibson and Olson and reach the conclusion that the rail was not expanded. Olson says that the rail was tight on account of the trains running in one direction and on account of the heat, and that he struck the end rail two or three times after the bolts were cut with a big iron sledge-hammer, but did

not get it loose from the other rail; while Ibson testifies that he knew that, if the rail was compressed at the north end, when it was released it was liable to jump, and that it would be dangerous for any one to stand inside when the rail was released from pressure.

It is next contended that the accident "was one of those unusual and unexpected events which occasionally take place and which cannot be foreseen." As to this point, we think the testimony of the defendants' witnesses clearly shows that, when a rail which is expanded until it is tightly compressed at the end is released, it is liable to spring from a few inches to as much as four or five feet, and that the inside of the track in such case is a most dangerous position. Olson testifies he has seen rails spring five or six inches or a foot at the ouside, while Ibson frankly testifies that no one can tell where they will go.

The next point made is that the risk of a rail springing or jumping, as this one did, was one of the risks of the employment in which Rathjen was engaged; that he had four years' experience in work of this character, and that he knew that the rail was apt to spring when being taken up—citing in this connection the case of *Omaha Bottling Co. v. Theiler*, 59 Neb. 257. But Rathjen testifies that he did not know the rail was wedged; that he knew it was caught, but did not know but that it was caught by being imbedded in the ties, or by a spike; that he had seen rails jump before, but only a few inches. There is no evidence to contradict him on this point, and, if the jury believed him, the doctrine of the *Omaha Bottling Company* case, quoted by defendants, that "a servant who, from the length or character of previous service or experience, may be presumed to know the ordinary hazards attending the proper conduct of a certain business, is not entitled, as an absolute right, to the same or similar notice of dangers incident to the employment as if he were ignorant of, or inexperienced in, the particular work," is not applicable. The evidence clearly shows that Rathjen was

not aware that the rail had expanded, or that, if so, it was liable to spring so far.

It is next objected that the court erred in permitting the plaintiff and Fronk to testify as to the proper way to take out a rail wedged as this rail was. These witnesses testify that the proper way was to cut the bolts, knock the angle-bar out, and then knock the end rail out with a maul. This is exactly the method which Olson pursued. The defendants certainly could not be prejudiced by testimony showing that the plan which it tried to follow was the proper one. Further than this, the defendants met this issue by testimony to the effect that, when the rail was tightly wedged, the usual method was to force in the rail at the next joint, thereby relieving the pressure. It seems to us this matter is of little importance under the issues.

It is next contended that the court erred in permitting the witness Fronk to answer certain questions for the purpose of contradicting the evidence of the section foreman, Peters. Peters had testified that the usual method of taking the rails up was to release the angle-bars at the joint, go back about three or four feet, and push the rail out on the side where the spikes were drawn; that that was the method always used; that it had never occurred to him that the danger was any greater if the rail was wedged, than it would be if not wedged, and that it never occurred in his experience that there would be danger of its springing when it was released. On cross-examination he was asked whether, when he was removing a rail at a point near Gibson directly after the accident, he found a rail wedged at the end, and took a spike maul and hammered it until he got it loose, and if he did not then say in the presence of Fronk, "If Olson had broken that joint in that way, the old man would not have got hurt." He was also asked with reference to meeting plaintiff in January, 1907, on the railroad track near River View park, and telling him that, "If I had been there and had been removing that rail this accident never

would have happened, because I would have taken the
maul and broken the joints." Defendants contend that
the evidence to contradict him should not have been re-
ceived for the reason "that it was not a part of the *res
gestæ*. Peters was only a section foreman, and, any such
statement made by him does not bind the defendants or
either of them." But it was admitted merely for the pur-
pose of impeaching Peters, and not as direct testimony.
We can see nothing prejudicial to the defendants in its
admission.

It is also urged that the court erred in instructing the
jury that, if they found in favor of the plaintiff, "You
cannot find against one defendant and in favor of the
other." It is said that the only evidence as to a com-
mand given by Olson was that, of Rathjen himself; that
Fronk did not know whether it was Ibson or Olson who
spoke; and that if the command was given by Ibson, Ol-
son should have been exonerated, even though the railway
company was held liable. But the petition based the liabil-
ity of the defendants upon the command of Olson, the in-
structions base the railway company's liability alone upon
the command by Olson, and the jury were specifically in-
structed that, if they found that some one other than
Olson gave the order and command, then the plaintiff
cannot recover. The plaintiff chose to base his right to
recover upon Olson's command. He staked his whole
fortune upon this cast. Under such a theory, and under
the issues presented, the instruction complained of is not
erroneous, and was properly given. It could in nowise
prejudice Olson that the railway company's liability is
only predicated upon the theory of *respondeat superior*.

The refusal of the court to submit certain special find-
ings requested by Olson is assigned as error. We have
uniformly held that the submission of any such findings
is entirely within the discretion of the district court.
We find no abuse of this discretion in the refusal to sub-
mit these questions.

The issues in the case are simple. If the jury believed

that Olson knew that the rail was wedged, and carelessly ordered Rathjen to go inside and lift it up, and at about the same time told Simpson to go to the next joint and push it in, having knowledge that the inside of the rail while this was being done was a position of danger, and if Rathjen, in ignorance that the rail was wedged, took this dangerous position in obedience to the negligent order, and was injured in consequence, there was actionable negligence on the part of Olson and of his superior. If, on the other hand, the jury believed that Rathjen voluntarily placed himself between the rails, and was ordered out before the accident, as Olson testifies, then neither Olson nor the railway company are liable. The only material point in dispute was whether or not Olson directed Rathjen to go inside and lift. As to this there was a direct conflict in the evidence, which was a matter for the jury to determine, and with their determination of this question we are not at liberty to interfere. The witnesses were before them, and they had opportunities of determining their credibility with which we are not endowed. The case seems to have been carefully tried. The instructions were clear, definite, and concise. The damages, while large, are not complained of as being excessive, nor do we think they are, considering the injuries sustained, and the permanent defective condition of the plaintiff's leg.

We find no reversible error in the record, and the judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.