McLAUGHLIN v. CHIEF CONSOL. MINING CO. et al.

No. 3835.   Decided December 4, 1923.   (220 Pac. 726.)

1. TRIAL—PLEAS OF RELEASE AND FRAUD HELD LEGAL ISSUES TRI-
ABLE BY JURY. A plea of release and a reply that it was fraudu-
lently obtained present an issue of law which should be tried
by the jury with the main issue, especially as a preliminary
trial would only result in confusion, and be a departure from
the orderly conduct of a jury trial.[1]

2. MASTER AND SERVANT—EXONERATION OF SERVANT DOES NOT DIS-
CHARGE MASTER GUILTY OF DISTINCT NEGLIGENCE. Exoneration
of a servant does not discharge the master where there is evi-
dence of the latter's negligence distinct from the servant's al-
leged negligence.

3. MASTER AND SERVANT—COMPLAINT AGAINST MINING COMPANY
AND SHIFT BOSS HELD SUFFICIENT AS AGAINST FORMER. A com-
plaint alleging that defendants, a mining company and its shift
boss, knew or might have known, if they had properly inspected
the stope wherein plaintiff was working, that there was loose
rock and other material therein, but failed to pick down and
remove it or timber the place so as to prevent it from falling,
sufficiently stated a cause of action against the mining com-
pany, irrespective of its sufficiency as against the shift boss.

4. APPEAL AND ERROR—EVIDENCE VIEWED MOST FAVORABLY TO AP-
PELLEE. On appeal the evidence must be viewed in the light
most favorable to appellee.

5. MASTER AND SERVANT—VERDICT AGAINST MINING COMPANY HELD
SUPPORTED ASIDE FROM NEGLIGENCE OF FOREMAN. In an action
against a mining company and a shift boss in its employ for
injuries to a mucker from falling rock, earth, etc., evidence held
sufficient to support a verdict against the mining company,
without considering that as to the alleged negligence of the
shift boss, whom the jury absolved from liability.

6. APPEAL AND ERROR—ADOPTION OF THEORY SUPPORTED BY EVIDENCE
ASSUMED. If the evidence in an action against a mining com-
pany and an employé thereof for injuries to a miner supports
the theory that the company was liable without considering its

[1] Coke v. Timby, 57 Utah, 53, 192 Pac. 624; Dovich v. Chief Con.
Mining Co., 53 Utah, 522, 174 Pac. 627; Viallet v. Power Co., 30 Utah,
260, 84 Pac. 496, 5 L. R. A. (N. S.) 663.

employé's alleged negligence, it is the Supreme Court's duty to assume that the jurors adopted the theory supported by the evidence.

7.   PLEADING—COUNTERCLAIM SAME AS ANSWER PROPERLY DISMISSED. Dismissal of a counterclaim containing the same allegations as the answer *held* not error.

8.   ACTION—DISMISSAL OF SUIT AND INSTITUTION OF ANOTHER NOT CAUSE OF ACTION OR COUNTERCLAIM IN EQUITY OR OTHERWISE. Dismissal of a suit brought in a federal court and subsequent institution of another in a state court, not being interdicted by law, do not constitute a cause of action or counterclaim in equity or otherwise on the ground that plaintiff's purpose was to avoid a hearing in equity as to the validity of a release pleaded by defendant, though vexatious and burdensome to defendant, especially as the remedy at law is plain and adequate.[2]

9.   MASTER AND SERVANT—WHETHER MINER ASSUMED RISK HELD FOR JURY. Whether a mine mucker assumed the risk of injury from rock, earth, etc., falling from the roof and back of the stope in which he was working *held* for the jury.[3]

10.   MASTER AND SERVANT—ASSUMPTION OF RISK FOR JURY. Assumption of risk is an affirmative defense, and a question of fact for the jury, unless the evidence thereof is so clear and definite as to leave no room for two opinions.[4]

11.   APPEAL AND ERROR—WEIGHT OF EVIDENCE NOT FOR SUPREME COURT. It is not for the Supreme Court to judge the weight of conflicting evidence or pass on the credibility of witnesses.

12.   RELEASE—TESTIMONY AS TO STATEMENT BY RELEASOR'S PRESIDENT AS TO ABILITY TO LIVE ON AMOUNT PAID HELD IMMATERIAL. In an action for injuries to a servant, where defendant pleaded a release, plaintiff's testimony that defendant's president told him that any one who could not live on the amount paid him ought to be dead *held* immaterial.

13.   APPEAL AND ERROR—IMPROPER ADMISSION OF TESTIMONY HELD NOT REVERSIBLE ERROR. In an employee's action for injuries, where defendant pleaded a release, improperly admitted testimony that defendant's president told plaintiff that any one who

---

[2] *Park* v. *Wilkinson*, 21 Utah, 279, 60 Pac. 945.

[3] *Bakka* v. *Coal Co.*, 43 Utah, 345, 134 Pac. 888.

[4] *Shepherd* v. *Payne*, 60 Utah, 140, 206 Pac. 1098; *Taylor* v. *L. A. & S. L. R. R. Co.*, 61 Utah, 524, 216 Pac. 139.

could not live on the amount paid him should be dead *held* not reversible error, not being calculated to influence or mislead any juror of ordinary intelligence.

14. TRIAL—EXCEPTION TO INSTRUCTION NOT SUSTAINABLE IF PART GOOD. An exception to an instruction as a whole cannot be sustained if any integral part is good.[5]

15. MASTER AND SERVANT—SERVANT NOT ENTITLED TO DAMAGES FOR INJURIES FROM KNOWN DANGER. A servant is not entitled to damages for injuries resulting from working in a dangerous place, even when the danger is created by the master's negligence, if it was known to the servant or so open or obvious that it must be supposed that he knew of it.

16. APPEAL AND ERROR—INSTRUCTION CORRECT IN PART HELD NOT REVIEWABLE ON EXCEPTION TO WHOLE. An instruction *held* not reviewable on exception to the instruction as a whole, the first part, which stated a correct proposition, though too favorable to defendant, being clearly severable from the remainder.

17. TRIAL—EXCEPTION TO INSTRUCTION MUST BE SPECIFIC. An exception to an instruction must call the trial court's attention to the particular part claimed to be faulty.[6]

18. APPEAL AND ERROR—JURY'S VERDICT ON CONFLICTING EVIDENCE NOT DISTURBED. The jury's verdict on conflicting evidence as to whether a servant was making safe an unsafe place of work when injured will not be disturbed.

19. APPEAL AND ERROR—APPROVED VERDICT ON CONFLICTING EVIDENCE NOT DISTURBED. When the evidence is conflicting in a law case, and the court denies a motion for new trial, the judgment must stand.

20. RELEASE—INSTRUCTION TO CREDIT DEFENDANT WITH SUM PAID ON RELEASE HELD PROPER. In an employee's action for injuries, where defendant pleaded a release, which plaintiff claimed was fraudulently obtained, the jury were properly instructed to credit defendant with the sum paid if the issues were found in the latter's favor.[7]

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson, Judge.*

[5] *Hansen* v. *O. S. L. R. R. Co.*, 55 Utah, 577, 188 Pac. 852.
[6] *Farnsworth* v. *U. P. Coal Co.*, 32 Utah, 112, 89 Pac. 74.
[7] *Coke* v. *Timby*, 57 Utah, 53, 192 Pac. 624.

Action by William C. McLaughlin against the Chief Consolidated Mining Company and another. From a judgment against the named defendant, it appeals.

AFFIRMED.

*M. E. Wilson* and *Cheney, Jensen, Holman & Stephens*, all of Salt Lake City, for appellant.

*Willard Hanson* and *F. B. Scott*, both of Salt Lake City, for respondents.

WEBER, C. J.

The judgment of the trial court in this case was affirmed on July 11, 1923. On petition of appellant a rehearing was granted, and counsel again made oral arguments and submitted additional briefs. The former opinion will be superseded by this one, which will be the only opinion officially published.

The Chief Consolidated Mining Company, a corporation, appeals from a judgment in favor of plaintiff and against the mining company for $15,000, and in favor of Hanley, its codefendant. No appeal is prosecuted by any one from the judgment in favor of Hanley.

The complaint charges that on May 25, 1917, plaintiff was in the employ of defendant company, as a mucker, working on or near what was known as the 1,800-foot level of defendant company's· mine at Eureka, Utah; that said work was being done in what was known as the 1,873 drift or stope; that James B. Hanley was in the employ of said mining company as its shift boss, and as such had immediate charge and supervision of the plaintiff, and directed and supervised the plaintiff in his work. It is alleged that the back and roof and sides of the place of work where the plaintiff was employed were loose, and that to make it reasonably safe for those therein employed it became necessary, in the exercise of reasonable care, for the

defendants to inspect the roof, back and sides thereof, to pick down and remove all the loose rock, and other material likely to fall of its own weight, and that it became the duty of defendants to timber the same, and to omit to inspect said drift and stope, and to omit to pick down and remove the said rock and other materials, and to omit to securely timber the said stope, rendered the place unusually and unnecessarily dangerous to the muckers therein working; that defendants had full knowledge of these matters, and that they knew or might have known, if they had properly inspected said roof and back, that there was loose rock and other material in the back and roof of said stope and place of work, and failed and neglected to pick down and remove the loose rock or other material from the back and roof of said stope and place of work of plaintiff, and that defendants failed to timber said place of work so as to prevent loose rock, earth, and other material from falling down from the back and roof of said place of work.

It is alleged that defendants, with knowledge of the dangerous condition, carelessly and negligently assured plaintiff that the place of work was safe, and that there was no danger of rock and earth and other material falling from the roof and back of said stope, and that, pursuant to the demand and direction of defendants, and relying upon assurance and information given him by them that the place was safe, plaintiff worked therein on the 25th day of May, 1917, and while working in said place at said time a large quantity of earth, rock and other material fell from the roof, back, and side of the said stope and place of work, and fell upon plaintiff, severely injuring him.

To this complaint the corporation defendant filed its answer and counterclaim. By stipulation of the parties in open court the answer of the mining company was considered as the answer of defendant James B. Hanley so far as applicable, and the reply as filed to the answer of the company was considered as the reply to the answer of defendant Hanley. In this answer the ownership of the mine and the employment of plaintiff are admitted. It is also admitted that plaintiff was injured while in the service of the mining

company; that James B. Hanley was the shift boss of defendant company; that from time to time, under the supervision of his superior officers and directors, he gave direcsions to other employés, including the plaintiff herein, in carrying on defendant's work of operating its mine. The allegations of negligence, and all other allegations of the complaint not admitted, are denied. The affirmative defense of assumption of risk is set forth as a second defense. As a third defense the corporate defendant alleges that on the 14th day of December, 1917, defendant paid to plaintiff $2,500, and that plaintiff released and forever discharged said defendant from all claims and causes of action which he then had or might thereafter have on account of injuries sustained by him in the accident mentioned in the complaint. A counterclaim is also pleaded, the allegations of which will be referred to hereinafter.

In his reply the plaintiff claims that the release pleaded in the answer was obtained from him by fraudulent representations, stating in detail the acts alleged to be fraudulent, and which are pleaded in avoidance of the release.

The first contention of appellant is that it was entitled to a separate trial of the issues of fact relative to the release; that the court was, upon demand of appellant, required to order such issues to be tried and determined before entering upon an examination of the issues relative to liability for personal injuries; that these issues were of an equitable rather than a legal character, but that, whether legal or equitable, the issues regarding the release should have been tried first.

It has been held by many courts that a releasor cannot maintain an action for damages sustained by him until he has had the release rescinded in an equitable proceeding. The authorities that favor this doctrine are cited in *Union Pacific Co.* v. *Syas* (C. C. A. 8th Cir.) 246 Fed. 561, 158 C. C. A. 531, in which the court held that, in an action for damages for personal injuries, where defendant pleaded a release that was attacked by plaintiff as having been procured by fraud, it is improper for the court to submit the question of fraud to the same jury trying the action for

damages; that a proceeding to rescind the release on the ground that it was obtained by fraud is essentially an equitable proceeding. In *Fay* v. *Hill*, 249 Fed. 416, 161 C. C. A. 389, the same court follows the doctrine announced in the Says Case. Other federal courts have reached the opposite conclusion, and hold that the defense based upon a release under a reply alleging fraud and misrepresentation raises a legal issue, and one that is proper to submit to a jury. Thus it is said in *K. C. S. Ry. Co.* v. *Martin* (C. C. A.) 262 Fed. at page 243:

"The defendant set up in bar of the action a written release, alleged to have been executed by the plaintiff for a valuable consideration. The plaintiff replied to the effect that he was induced to execute the release by described fraudulent representations made to him by the defendant's agent, and that plaintiff, promptly after ascertaining the falsity of such representations, returned the check given to him when the release was executed. The court overruled a request of the defendant, made at the opening of the trial, that the issue so raised be heard and determined on the equity side of the court prior to the trial of the other issues involved; and the court, over the defendant's objection, submitted that issue to the jury with the other issues so submitted.

"There is a conflict of decisions on the question whether such an issue, raised as it was in the instant case, is one at law and triable by a jury. The view prevailing in some courts is that the issue is not one at law, unless the fraud charged touches the execution of the questioned instrument, so as to be provable under a plea or replication of non est factum. In the case of *Union Pacific Railway Company* v. *Harris*, 158 U. S. 326, 15 Sup. Ct. 843, 39 L. Ed. 1003, such an issue was treated as one triable by a jury in an action at law. That was a suit for personal injuries, in which a release was pleaded as a bar to the action. The plaintiff replied that the release was obtained through misrepresentations and fraud, and that the plaintiff, while he was ill, signed the release in ignorance of its contents. The court held that there was no error in the instructions given in submitting those issues to the jury, and affirmed the judgment rendered for the plaintiff. Though fraud other than that touching the execution of the release was set up in the pleading attacking its validity, it was decided that there was no error in the action of the court in submitting to the jury the issues raised.

"Upon a full consideration it was decided by the Circuit Court of Appeals for the Sixth Circuit, in the case of *Wagner* v. *National Life Ins. Co.*, 90 Fed. 395, 33 C. C. A. 121, Circuit Judge Taft delivering the opinion, that it is proper in a suit at law for the plaintiff

to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud touches the execution, or consists in misrepresentation as to material facts inducing execution. Another well-considered case to the same effect is *American Sign Co.* v. *Electro Lens Sign Co.* (D. C.) 211 Fed. 196. What the plaintiff does when he makes such a reply to a plea setting up a release, amounts to his saying that, because of the fraudulent misrepresentations alleged, the defendant is without right to maintain the defense based upon the release set up. A contract so procured is no more binding at law than in equity. It is competent for a court of law to decide that a transaction vitiated by fraud is not effective to confer the asserted right based upon it. *Buzzard* v. *Houston*, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; *Equitable Life Assur. Soc.* v. *Brown*, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682 .

"The sustaining of a replication such as the one in question does not require the giving of any equitable remedy or the application of any peculiarly equitable doctrine. The result is to sustain, on a ground cognizable in a court of law, a denial of the defendant's asserted right to maintain a defense based upon an instrument which is unenforceable because the plaintiff was led into making it by fraudulent misrepresentations. There seems to be no necessity of resorting to a court of equity to prevent the enforcement, by action or by defense, of an unsealed instrument procured by fraud. The cancellation and surrender of such an instrument are not necessary to prevent it being availed of by a party claiming under it. We are of opinion that reason and authority support the conclusion that the issue raised by the reply to the plea setting up the release was properly submitted to the jury."

In the case of *Olston* v. *O. W. P. & R. Co.*, 52 Or. 343, 96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915, it is held that the defense of release is a legal and not an equitable defense. The weight of authority is in favor of the proposition that the issue raised by a release that is pleaded and which is claimed to have been obtained by fraud, and therefore claimed void, is a legal and not an equitable issue. 34 Cyc. 105a; *Clark* v. *N. P. Ry. Co.*, 36 N. D. 503, 162 N. W. 406, L. R. A. 1917E, 309; *Quapaw M. Co.* v. *Cogburn*, 78 Okl. 227, 190 Pac. 416. No good reason has been given why it should not be tried with the main issue as was done in the instant case. This method facilitates the administration of justice and submits to the jury that which is a question of fact as much as any other issue in the case.

In *Coke* v. *Timby*, 57 Utah, 53, 192 Pac. 624; *Dovich* v.

*Chief Con. M. Co.,* 53 Utah, 522, 174 Pac. 627, and *Viallet* v. *Power Co.,* 30 Utah, 260, 84 Pac. 496, 5 L. R. A. (N. S.) 663, the question of fraud in procuring a release was submitted to the jury with other issues. While in none of them was adjudicated the question now raised, the method of procedure heretofore pursued in this state appeals to us as being proper and orderly.

In appellant's brief on petition for rehearing, special attention was called to the case of *Liberty Oil Co.* v. *Condon Nat. Bank,* 43 Sup. Ct. 118, 67 L. Ed. —, in which the Supreme Court of the United States held that, when an equitable defense is interposed to a suit at law, the equitable issue raised should first be disposed of as in a court of equity, and that if an issue of law remains it is triable to a jury. We have heretofore stated that the plea of release and the reply that it was fraudulently obtained presented an issue of law—not an equitable issue. As no equitable question is involved here, the decision referred to can be and is of no avail to appellant.

Appellant, however, contends that, even though the issue as to the release was a legal issue, it should have been tried first. In our opinion it would have been grossly erroneous to try the case piecemeal. Such a method would result in nothing save confusion, and would be a departure from the orderly conduct of a jury trial.

Another contention of appellant is that the verdict in favor of Hanley exonerated the mining company. In the complaint each defendant is charged with negligence. The jury in their verdict in favor of plaintiff and against the company also found in favor of Hanley. The appellant's argument is that the exoneration of Hanley is in legal effect an exoneration of the company; that the portion of the verdict which exonerates Hanley destroys that portion which is against the company, and that the verdict is in effect a finding that plaintiff has no cause of action against either of the defendants. As supporting their contention counsel cite *Portland Gold Min. Co.* v. *Stratton's Independence Co.,* 158 Fed. 63, 85 C. C. A. 393, 16 L. R. A. (N. S.) 677; *Hobbs* v. *Ill. Cent. R. R. Co.,* 171 Iowa, 624, 152 N. W. 40, L. R. A.

1917E, 1023; *Stevick* v. *No. Pac. R. R.*, 39 Wash. 501, 81 Pac. 999; *Rathjen* v. *C. B. & Q. R. R.*, 85 Neb. 808, 124 N. W. 473. The doctrine of these cases may be stated in the language of Judge Brewer in *N. O. & N. E. R. R.* v. *Jopes*, 142 U. S. 18, 12 Sup. Ct. 109, 35 L. Ed. 919:

"If the party who actually causes the injury is free from all civil and criminal liability therefor, his employer must also be entitled to a like immunity."

Other authorities to the same effect are: *Lowney* v. *Butte Elec. Ry.*, 61 Mont. 497, 204 Pac. 485; *Doremus* v. *Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649; *Morris* v. *Northwestern Imp. Co.*, 53 Wash. 451, 102 Pac. 402; *Sipes* v. *Puget Sound Elec. Ry.*, 54 Wash. 47, 102 Pac. 1057; *So. Ry.* v. *Harbin*, 135 Ga. 122, 68 S. E. 1103, 30 L. R. A. (N. S.) 404, 21 Ann. Cas. 1011; *Bradley* v. *Rosenthal*, 154 Cal. 420, 97 Pac. 875, 129 Am. St. Rep. 171; *McGinnis* v. *Railway Co.*, 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880, 118 Am. St. Rep. 661, 9 Am. Cas. 656; *Fimple* v. *So. Pac. Co.*, 38 Cal. App. 727, 177 Pac. 871; *Hayes* v. *Chicago Tel. Co.*, 218 Ill. 414, 75 N. E. 1003, 2 L. R. A. (N. S.) 764,; *Republic I. & S. Co.* v. *Lee*, 227 Ill. 246, 81 N. E. 411; *Chicago, etc., Ry. Co.* v. *McManigal*, 73 Neb. 580, 103 N. W. 305, 107 N. W. 243; *Indiana Nitro & Torpedo Co.* v. *Lippincott Glass Co.*, 165 Ind. 361, 75 N. E. 649. Among authorities holding to the contrary are *Ill. Cent. Ry. Co.* v. *Murphy's Adm'r*, 123 Ky. 787, 97 S. W. 729, 11 L. R. A. (N. S.) 352; *Broadway Coal M. Co.* v. *Robinson*, 150 Ky. 707, 150 S. W. 1000; *Ill. Cent. Ry.* v. *Outland's Adm'r*, 160 Ky. 714, 170 S. W. 48; *Carson* v. *So. Ry. Co.*, 68 S. C. 55, 46 S. E. 525; *T. & P. Ry. Co.* v. *Huber* (Tex. Civ. App.) 95 S. W. 568.

If it be conceded that the proposition that exoneration of the servant should discharge the master sought to be held liable because of the servant's negligence, where there is no negligence except by the servant, is unassailable in its logic, it does not follow that the finding in favor of Hanley necessarily absolves the mining company from liability. The question remains whether there was evidence of the appellant's negligence distinct from the alleged negli-

gence of the employé. If Hanley's negligence was only concurrent, and there was other negligence upon which to predicate a cause of action, the verdict exonerating Hanley would not vitiate the finding against the company. *Usher* v. *A. S. & R. Co.,* 97 Neb. 526, 150 N. W. 814; *Wilson* v. *Morris,* 108 Neb. 255, 187 N. W. 805; *Clay* v. *Chicago Ry. Co.,* 404 Minn. 1, 115 N. W. 949; *C. & O. Ry.* v. *Booth,* 149 Ky. 245, 148 S. W. 61; *Benson* v. *Sou. Pac. Co.,* 177 Cal. 777, 171 Pac. 948; *Webster* v. *Chicago Ry. Co.,* 119 Minn. 72, 137 N. W. 168; *McInerney* v. *Union R. R.,* 50 Cal. App. 538, 195 Pac. 958; *Green* v. *Sou. Pac. Co.,* 53 Cal. App. 194, 199 Pac. 1059.

Eliminating Hanley from the complaint, the remaining allegations are sufficient to constitute a cause of action against the mining company. The complaint being complete without the inclusion of Hanley, the question is whether, when the evidence of Hanley's negligent assurance of safety is disregarded, there remains evidence of negligence imputable to the company independent of that of Hanley. Omitting all evidence referring to Hanley, the facts, as shown by the record, may be summarized as follows:

Plaintiff had been employed as a mucker although he had had previous experience in various capacities as a miner, had helped timbermen, operated a drilling machine, shot down material, and put in blocks and wedges. His duties as a mucker consisted of shoveling into the cars the ore and other material shot down by the miners. He had nothing to do with picking down the loose rock or earth from the sides or roof of the stope, nor with timbering or inspection, at the time of his injury. Plaintiff was employed on the shift that commenced work at 8 a. m. and had worked three or four days in that stope previous to the accident. The day before plaintiff commenced working in the stope the miners had been blasting above where plaintiff thereafter worked, and had shot down a large quantity of rock, earth, and other material. A brace that had been put in to support the wall was shot out and was not replaced. One of defendant's witnesses testified that if a brace had been put back the boulder that fell from above in the stope would not have

fallen as it did the day before the accident. After the shots were fired none of the usual precautions was taken; the loose rock was not picked down, no braces or timbers were put in, and there was no inspection by any one. While plaintiff was working in the stope, no shooting or work of any kind was done in the roof or back of the stope. For several days prior to the injury plaintiff shoveled muck at a point where the stope was timbered, but on the morning of the day of the accident he commenced working at the elge of the timbers. Above his head was an open space about 20 feet in height. The exposure to the air made the fall of overhanging material more likely. On the morning of the accident, when plaintiff came on shift, he found a large boulder with some other material that had fallen the night before. He started first to break up the boulder, and when he had about finished that task the general foreman of the mine, Mr. Nesbitt, appeared at the stope, about 9:30 in the morning, whereupon plaintiff called his attention to the boulder, and stated it had fallen the night before. Plaintiff also said, "Small pieces fall once in a while." He asked the general foreman whether it was all right, and Nesbitt replied, "Just continue working; it's all right." Mr. Nesbitt had been general foreman of the mine for nearly two years. His duties were to look after the labor and the property; he had general charge of everything underground and on the surface. He testified:

"I had charge of everything about the mine. I was held directly responsible for everything pertaining to it."

He had seen the place the day prior to the accident and a few days before that. He had seen that perhaps a carload of muck had fallen, probably a ton, but he testified he did not think the place was unsafe to work in. Nesbitt denied in toto the conversation testified by plaintiff. He also said that the braces that had been shot down had never been replaced, but on cross-examination he said a post could have been put there. After the alleged conversation with Nesbitt plaintiff continued working till about 3:30 p. m., when a large boulder and other material fell upon and severely injured him.

By other of defendant's witnesses it was shown that the brace that had supported the wall had been shot out, that the brace had not been replaced, and that a boulder that struck plaintiff came from the place from which the brace had been removed, and that if a brace had been put back the boulder would not have fallen.

Nesbitt, the foreman, knew all the conditions that have been described; knew that the timbers had been shot out, making unsafe the place where plaintiff worked. He knew the loose material had not been picked down and timbered, as it should have been; he told plaintiff to continue his work, and it was Nesbitt who, according to his own testimony, was directly responsible for everything pertaining to the mine. With the negligence of the miners who made the stope unsafe and left it in that condition and the negligence of Nesbitt the company was chargeable, regardless of whether Hanley was negligent or not.

Viewed in the light most favorable to plaintiff, as it must be on appeal, the evidence, of which we have given a meager outline, is sufficient to support the verdict without taking into consideration any of the testimony relating to the alleged negligence of Hanley. This does not involve the proposition that the case was tried on a theory in the district court that is abandoned or shifted on appeal. The testimony relating to Nesbitt was both material and important. The jury may have concluded that Hanley should not be held for the reason that he was working under Nesbitt, who was not made a defendant, and that Nesbitt and the mining company were blamable, and not Hanley. If the evidence supports the theory that the mining company was liable without taking into consideration anything that Hanley did or said, or that he failed to do, it is the duty of this court to assume that the jurors adopted the theory supported by the evidence. *Simmons* v. *Pac. Elec. Co.* (Cal. App.) 212 Pac. 641.

The defendant interposed a counterclaim, which was dismissed by the court on motion of plaintiff. This ruling is assigned as error. In the counterclaim it is alleged, in substance, that at the time of his injuries plaintiff was a mucker

in defendant's mine; that on May 25, 1917, while so en-
gaged, plaintiff sustained certain bodily injuries by means
of defendant's negligence; that this claim was disputed by
defendant; that defendant and counterclaimant paid to the
said plaintiff the sum of $2,500, and plaintiff made, executed,
and delivered to this defendant the release set forth in the
answer; that, notwithstanding said release, plaintiff still
makes claim against the defendant for $30,000 on account
of said injuries, and, although plaintiff has retained the said
sum of $2,500, he still claims that the said release is void
and of no legal effect, and that it was obtained from him
by means of certain fraudulent representations; that on No-
vember 21, 1918, plaintiff instituted an action in the District
Court of the United States for the District of Utah, and filed
a complaint therein against this defendant, in substance
identical with the complaint in this action, claiming damages
in the sum of $30,000; that thereafter this defendant filed
its answer, which was in substance identical with the answer
herein, and in said answer alleged as an affirmative defense
the release above mentioned; that thereupon plaintiff filed
his replication to said answer, in which he attacked the va-
lidity of said release on the ground that it was obtained
from him by means of fraudulent representations of fact;
that thereupon this defendant and counterclaimant claimed
the right to have said issue as to the validity of said release
determined in equity in accordance with the law and the
practice governing such matters in that court; that there-
upon, after the matter had been set down for hearing on
the equity side of the court, plaintiff dismissed his action in
order to avoid a hearing in equity as to the validity of said
release; that thereafter, on November 5, 1919, plaintiff in-
stituted this action in the district court of Salt Lake county,
Utah, claiming $30,000 damages, and joining one James B.
Hanley; that thereupon this defendant duly removed the
action from the state district court to the federal District
Court; that thereupon plaintiff instituted an action against
this defendant in the district court of Juab county, Utah,
claiming damages in the sum of $30,000, and joining said
Hanley as codefendant, for the purpose of defeating the

jurisdiction of the federal court, and preventing a removal thereto; that this defendant filed its petition and bond for removal in said district court of Juab county, Utah, and duly obtained the state court's order of removal to the federal court, and that the transcript of said case will be filed in the time allowed by law; that the claims of plaintiff are not only void and without merit, but they are made and the suits have been instituted and are being maintained by plaintiff for the purpose of harassing and vexing this defendant; that in the defense of these actions defendant has been compelled to incur liability and pay out large sums of money in protecting itself against the unlawful claims and improper actions of this plaintiff; that it has been compelled to employ attorneys and to engage the time of its officers and servants, and has been annoyed and vexed and harassed to its great and irreparable damage; that plaintiff is insolvent; that defendant is entitled to have the validity of this release determined in equity prior to the trial of the other issues in the case; that unless plaintiff is restrained from continuing to annoy and bring vexatious lawsuits against the defendant he will continue so to do, to the great and irreparable damage and annoyance of defendant.

As to the plea in the counterclaim concerning release or settlement, it is sufficient to say that the same allegations were contained in the answer. To institute a suit, and thereafter, for reasons of his own, dismiss it without prejudice, was exercising a right given plaintiff by the laws of Utah. "The law does not inquire into the motives which lead a man to do what he has a right to do." *Clark* v. *Clapp*, 14 R. I. 248. It may be deemed "vexatious" by a supersensitive defendant to be haled into court by one who thinks himself aggrieved; it may be burdensome to a defendant to have a plaintiff dismiss a suit and thereafter institute another. These acts, however, are not interdicted by law, and are not sufficient to constitute a cause of action, either in equity or otherwise.

Many cases are cited by appellant to sustain its proposition that it presented an equitable counterclaim which the court had no right to dismiss. In *Buxton* v. *Broadway*, 45

Conn. 540, it was held that a court of equity had power to cancel notes obtained by fraud which matured in 17 years, and that the maker of the notes was not required to wait for relief until suit should be brought on the note. It is a far cry from the case of *Buxton* v. *Broadway* to the one at bar. And so with the other cases cited. Upon examination, some will be found to be cases in the nature of ejectment, like *Park* v. *Wilkinson,* 21 Utah, 279, 60 Pac. 945, in which it was held that, in an ejectment suit, defendant was entitled to file a cross-complaint for equitable relief. Some of the cases are to the effect that courts may enjoin continued acts of trespass, resulting in irreparable injury. Others involve the cancellation and rescission of written instruments. In others well-known equity rules are applied. In the last case cited by appellant, *Rankin,* v. *Eppler,* 106 Kan. 131, 186 Pac. 1008, the maker of ten notes sued for their cancellation, claiming all had been satisfied. In June, 1918, Eppler brought suit on one of the notes, and then suffered a dismissal for want of prosecution. In October, 1918, Eppler sued on another note before a justice of the peace. The proceeding was still pending when Rankin commenced his suit. The petition alleged that the actions brought by Eppler were not instituted in good faith; that the purpose was to harass Rankin. The court held that, since a judgment on one, two, or several of the notes would not free plaintiff from vexation and expense, the defendant's conduct took the form of continuing trespass on the plaintiff's time, money, and tranquility, which he was entitled to end once for all by a single action in which full relief, including surrender of the satisfied notes, might be granted.

The doctrine announced in the cases above mentioned is not applicable here, where the defense is interposed by pleading the release, where the remedy at law is plain and adequate, and where the plaintiff has done nothing save exercise a legal right.

Counsel insist that the record discloses a total failure to prove any negligence on the part of appellant or its agents. That a shot was fired in the stope which made the roof and sides loose; that the roof was not inspected, and that the

loose rock and other material was not picked down; that some timbering was necessary to make the place reasonably safe; and that the duty of removing the loose material and putting in the timbering or bracing was neglected, though the same was necessary and feasible—presented sufficient evidence of negligence to justify the finding of defendant's negligence by the jury.

Whether the plaintiff assumed the risk is more questionable. Inspection was not one of plaintiff's duties. According to his testimony, he did not know the timbers had been shot out, did not know the roof had not been inspected, or that it was dangerous, and believed everything was safe. He had observed small pieces falling in the stope, but, according to the testimony of another witness, these pieces are constantly falling in a mine, and no special attention is paid to them. It was a matter of everyday occurrence. Nesbitt, the general foreman, did not think it was dangerous, and assured plaintiff of safety by ordering him to continue working, and saying, "It's all right; continue **9** working," in response to plaintiff's inquiry as to the safety of the place. Under these circumstances assumption of the risk was a question of fact for the jury's decision, not a question of law for the court's determination.

Counsel for appellant's rely upon *Bakka* v. *Coal Co.*, 43 Utah, 345, 134 Pac. 888, in which the judgment of the district court in favor of plaintiff was reversed for the reason, among others, that plaintiff had assumed the risk under the evidence disclosed by the record, Bakka was injured by the fall of a piece of coal that was "but a foot or little more" above his head. The roof itself was in good condition, and free from overhanging coal or other substance. The coal did not fall from the roof. Bakka's duty was to take down whatever loose coal, dirt, and rock might be found —to put the entry in shape. His work related to and was a part of the prosecution of the extension of the entry, the miners making the excavation and removing the coal, plaintiff and his companions removing the dirt thrown to one side by the miners. In the instant case timbers that had supported the roof were shot out, and not replaced, though

the stope could have been braced and thereby made reasonably safe. No such facts appear in the Bakka Case. Here also was an order to continue work, given by a superior who, in the exercise of reasonable care, should have known that plaintiff's place of work was dangerous.    **10** In the light of the evidence it cannot be said that the court should have held that respondent assumed the risk as a matter of law. Assumption of the risk is an affirmative defense, and, unless the evidence showing assumption of risk is so clear and definite as to leave no room for two opinions, it is properly a question of fact for the jury. *Shepherd* v. *Payne,* 60 Utah, 140, 206 Pac. 1098; *Taylor* v. *L. A. & S. L. R. R. Co.,* 61 Utah, 52, 216 Pac. 239.

It is argued that the undisputed evidence shows conclusively that the release was valid in every way, and that no fraud was committed in its procurement. On    **11** this proposition the evidence was conflicting. It is not for us to judge its weight nor to pass upon the credibility of witnesses.

Plaintiff in his testimony volunteered the statement that Walter Fitch, Sr., president of defendant company, said to him that any man who could not live on $2,500 ought to be dead. The court refused to grant appellant's motion to strike this testimony, grounded on the reason that it was immaterial and incompetent. The testimony was clearly immaterial. Later on Mr. Fitch, when on the witness stand, emphatically denied the statement attributed to him. While the ruling of the court was erroneous, the tes-    **12, 13** timony thus improperly admitted could certainly not influence or in any manner mislead any juror of ordinary intelligence.

Appellant contends that the court erred in giving the following instruction:

"The court instructs you that a servant is not entitled to recover damages for injuries sustained as the result of working in a dangerous place, even when the danger is created by the negligence of the master, if the danger was known to the servant, or was so open or obvious that it must be supposed that he knew of it. But in determining whether the servant assumes the risk of injury in working in a dangerous place it is proper to consider whether the

servant has received any assurance from his master with respect to the place or the safety of it, and, if it is proved by a preponderance of the evidence that the master has in effect assured the servant that the place is safe when such place is as a matter of fact dangerous, and the servant continues the service by reason of such assurance, he may recover, unless the danger is well known to him or is so plain and obvious that a prudent, careful man would refuse to run the risk."

The exception taken was to the instruction as a whole.

"It is a rule too well established to be the subject of controversy that such an exception cannot be sustained if any part of the instruction is good." *Hansen* v. *O. S. L. R. R. Co.*, 55 Utah, 577, 188 Pac. 852.

The test, as stated in the language of Mr. Justice Thurman in the Hansen Case, is:

"Is the instruction divisible into integral parts, each of which, when considered separately, is bad in law, or is one or more of the integral parts unexceptionable? If the former, the instruction is bad as a whole and the exception is well taken; if the latter, the exception cannot prevail even though the instruction is objectionable in one or more of its integral parts."

The first part of the instruction stated in a separate sentence, closing with a period, is clearly severable from the remainder, and states a correct rule of law, though too favorable to appellant.

It is apparent that appellant's exception was not properly taken, and that, although part of the instruction be erroneous, it is not a proper subject for review by this court.

The purpose of an exception to an instruction is to call the attention of the trial court to the particular part of the instruction claimed to be faulty. As stated in *Farnsworth* v. *U. P. Coal Co.*, 32 Utah, 112, 89 Pac. 74:

"It seldom occurs that an entire instruction—that is, all the propositions contained in it—is bad, and hence the particular part that is unsound should be pointed out to the trial court for immediate correction. It is an easy matter to except to a phrase, or to a sentence, or to any number of such phrases or sentences, and, when this is done, the matter can be intelligently corrected by the trial court, and, if not corrected, may likewise be intelligently reviewed by this court. Without this no intelligent review can be made, nor is the lower court advised just to what part of the in-

struction the exception refers, nor does this court, until argument is made upon it. Moreover, it is not a review at all of the lower court's act, since it was not brought to its attention at the trial."

At appellant's request the court instructed the jury that, if they found from the evidence that plaintiff in taking out the muck was changing the character of the place of work as to its safety, then no duty existed on the part of the defendant to furnish the plaintiff with a safe place in which to work. It is argued that after giving this instruction the court could not consistently refrain from directing a verdict in favor of defendant.

The record contains evidence tending to prove that plaintiff was making safe a place that was unsafe—that he was changing the character of the place. It also contains evidence to the contrary. Thus J. P. Sharp, one of the witnesses for appellant, testified on cross-examination that shoveling up the muck did not at all change the condition of the roof where the rock came from that hit plaintiff, and he further said, in effect, that plaintiff's work cleaned the stope—made its floor smooth and clean. With good reason the jury could give credence to his testimony on cross-examination and arrive at the conclusion that plaintiff by his work was not changing and did not change the condition of the stope as to its safety. The jury passed upon the conflicting evidence, and, having by its verdict found in favor of plaintiff, that finding must be left undisturbed. When in a law case the evidence is conflicting and the court has denied a motion for new trial, the judgment must stand.

One of the instructions criticized by appellant as erroneous permitted the jury to credit the defendant with the sum of $2,500 that had been paid plaintiff upon the release if the issues were found in his favor. The instruction was proper. In *Coke* v. *Timby*, 57 Utah, 53, 192 Pac. 624, the jury failed to deduct the amount paid for an alleged release and this court ordered the amount deducted from the judgment.

The record containing no reversible error, the judgment is affirmed.

¹GIDEON, THURMAN, FRICK, and CHERRY, JJ., concur.