14529

MULLIKIN v. SOUTHERN BLEACHERY & PRINT WORKS
*ET AL.*

(192 S. E., 665)

450

June, 1936.

*Messrs. Price & Poag* and *W. A. Bull,* for appellant-respondent, cite:

*Messrs. Stephen Nettles* and *J. Douglass Poteat*, for respondent-appellant, Southern Bleachery & Print Works, cite:

September 9, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff, Mullikin, brought action to recover damages in compensation of injuries which he alleges he sustained through the negligent conduct of his employer, the Bleachery & Print Works, and his coemployee, John Washington. The answer of the defendant Bleachery & Print Works set up as defenses the pleas of general denial, contributory negligence, and assumption of risk. John Washington did not answer. When we speak in the course of this opinion of the defendant, it will be understood that we speak of Southern Bleachery & Print Works.

The case was tried by Judge Oxner, with a jury. At the close of the testimony by plaintiff and his witnesses, the defendant moved for a nonsuit; upon this motion being refused, the defendant's attorney announced that he would offer no testimony, and then moved for a directed verdict on the grounds that: (1) Plaintiff's injuries were caused by the negligence of his fellow servant, John Washington; (2) plaintiff's contributory negligence; (3) plaintiff's assumption of the risk.

After argument of the motion, his Honor conferred with counsel, reserved his decision, and submitted the case to

the jury, which found for plaintiff the sum of $10,000.00 against the bleachery company, and $100.00 against John Washington.

The defendant moved to set aside the verdict and enter judgment in its favor on the ground that the Court should have directed a verdict for it, and, failing that, for a new trial *nisi* because the verdicts were inconsistent; that against the master being greater in amount than that against the servant.

The motion was marked "heard" and thereafter was argued at chambers. December 16, 1936, Judge Oxner filed an order in which he held that he should have granted the motion for directed verdict for defendant before the case was submitted to the jury, on the ground that plaintiff's injuries were caused by the act of his fellow servant, the defendant John Washington; but that he now lacked the power to do so, because the verdict had been received and the jury discharged.

He also held that there was no proof of any negligence of the master, the bleachery, apart from that of the servant, Washington; therefore, he ordered a new trial unless the plaintiff remitted on the record all of the verdict against the bleachery except the sum of $100.00. This the plaintiff refused to do, and both parties have appealed from that order.

The appeal of the plaintiff rests upon five exceptions, all of which challenge the correctness of the order, which holds that the verdicts are inconsistent and for that reason directing a new trial *nisi*.

The defendant bleachery appeals upon nine exceptions, which assail the order upon the grounds that his Honor should have granted the motion for directed verdict when it was made, before the case was submitted to the jury; that the Judge should have set aside the verdict and entered judgment for the defendant.

We are of the opinion that all of the subsidiary issues made by the arguments of both sides will be disposed of by the decision by this Court of the two questions, viz.:

(1) Should the Court have granted the motion for directed verdict?

(2) Should the Court have granted the motion for new trial on the ground of the inconsistency of the verdicts?

The cardinal question underlying the whole matter is this: Is there proper allegation in the complaint, and evidence which tends to sustain it, of negligence of the master, other than the allegations of negligence in the failure to furnish a safe place to work, and the failure to employ competent servants to do the work?

In his order, Judge Oxner said: "A careful reading of the complaint shows clearly that the only acts of negligence alleged against the defendant, Southern Bleachery & Print Works, are the failure to furnish a safe place to work and the failure to employ competent servants to do the work. There is no allegation in the complaint that the method of doing the work adopted by the master was unsafe, or that there was a lack of supervision on the master's part. Evidence of unsafe method, if any had been offered, would have been, therefore, incompetent as not being responsive to the pleadings. However, there was no evidence adduced tending to prove unsafe method or improper supervision so that the only act of negligence to be considered is that of the co-defendant, John Washington."

The complaint alleges that the defendant failed to furnish plaintiff a safe place to work, and, in causing the bales of cloth to topple over, defendant made such place highly dangerous and unsafe for plaintiff to do his work; that it employed an incompetent and careless Negro workman, who was incapable of exercising good judgment and discretion; that the stack of bales of cloth was toppled over without giving warning to plaintiff, or others, and that it was the custom of defendant to stack bales of cotton cloth weighing

500 pounds in the room through which plaintiff had to pass in the performance of his work; that in doing his work he was in the act of passing by one of these stacks when John Washington caused the stack to topple over, which cast a bale of cloth of about 500 pounds in weight upon plaintiff, causing the severe injuries of which he complains.

Are these allegations broad enough and definite enough to advise the defendant that it must defend itself against the allegation that the method which it adopted was unsafe, and that there was a lack of supervision of the work?

An inspection of the complaint shows that it specifically alleges that the method adopted by the defendant was to stack the bales of cotton cloth along the passageway through which employees must go in doing their work; was to topple over these stacks of heavy bales of cloth and cause them to fall so that the bale desired for use might be had; and that this work was entrusted to an ignorant and incompetent workman. Now, without objection, abundant evidence was given to show that in the bleach house were stored bales of cloth sent in by various mills to be bleached, some of these stacks were twelve feet high. The bales of cloth were given numbers to show the mill to which they belonged, but they were not stacked by such numbers in regular order, but indiscriminately. So that, when it was necessary to get out a bale to be sent to the bleachery, a workman was given the number of the bale wanted and he was sent to get it. There is evidence that, if the number sought was embedded in the stack under other bales, the whole stack was toppled over and fell into the passageway through which employees must go. If necessary, the workman would get up on top of the stack and set it to rocking until it acquired sufficient momentum to topple it over.

Surely there is here sufficient allegation and testimony that the method of doing the work was unsafe, and that in sending an incompetent person to do this work there was a lack of supervision to see that the work was properly and

safely done. The method by which John Washington got the desired bale of cloth from the stack, by toppling the entire stack over, was known to the defendant. Claude Hale testified for plaintiff, that he was employed by the defendant corporation, that John Washington worked under him, who stacked the bales and trucked them out:

"Q. How did you work that, what method did you employ, did you give him a slip? A. Yes, sir. We had what we call an open-up slip, and had the bales numbered on the slip, and I gave him the slip and he knew what to bring out.
*   *   *

"Q. How would he get these bales out of the stacks? A. He would climb up on top of them and tumble them over.
*   *   *

"Q. If there were five or six of them he would go up—A. Get up on another stack.

"Q. If he wanted a bale on the bottom of the stack or one next to the bottom and several may be on it he would have to topple the whole stack over to get it? A. Yes, sir."

Here is the positive evidence that this was the method pursued by John Washington in getting at the bales he was sent for, pursued with the knowledge, consent, and acquiescence of the master. It was the method adopted, or approved and acquiesced in, by Mr. Hale, the representative of the master. Was it the safe method, the proper method? Plats and pictures of the premises where the accident occurred, of the piles of packed bales, of the open space where the employees must move, and where the toppled bales must fall, were in evidence. Might not the jury properly, upon the strength of this evidence, ask if there were other and safer methods? Would it not have been a legitimate inquiry why each set of bales under the same number were not stacked together instead of being intermingled with bales of other numbers? Again, might it not have been legitimate for the jury to inquire, even if the kindred numbers were stacked together, was it wise or safe to stack the bales so high that

it was necessary to topple them over when a certain bale was wanted? Did the method of stacking the bales and the method of toppling them render the place unsafe for the employee required to use it?

We think there were allegations in the complaint appropriate to these questions, and that there was evidence pertinent to them for the consideration of the jury.

There is a case in our reports in striking similarity to this, *Montgomery v. Conway Lmbr. Co.,* 171 S. C., 483, 172 S. E., 620, 621. There the action for damages was based on the allegation that plaintiff, an employee of the lumber company, was set to work near a large pile of lumber (12 feet high); that the lumber was piled without cross-pieces or cross-sticks between the planks to keep them from falling, thus rendering the place unsafe for the workmen. The defendant demurred to the complaint because there was no allegation that any instrumentality or agency of the defendant caused the lumber to fall. The Circuit Judge overruled the demurrer, and defendant appealed. This Court said, in deciding the appeal: "Section 477 of the Code of Civil Procedure 1932 provides that: 'In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties.'"

Again from that case is this quotation, taken from the case of *Mortgage Loan Co. v. Townsend,* 156 S. C., 203, 226, 152 S. E., 878, 886: "When a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it are to be regarded as embraced in such averment."

And this from *Temple v. Montgomery,* 157 S. C., 85, 91, 153 S. E., 640–642: "We are to remember in that connection also two well-established rules of pleading. The first is, what is now an elementary proposition, that pleadings are to be liberally construed in favor of the pleader."

On the merits of the case *then* on appeal, this Court said: "It is a fair and reasonable inference, and a logical deduction from the language used in the complaint, that it was meant to allege that it was negligence not to place crossings or sticks between the planks in the pile of lumber 12 feet high and 4 feet wide; that, if such crossings or sticks had been so placed, the lumber would not have fallen."

Applying these liberal rules of construction to the allegations of the complaint in this case, it seems to be a "fair and reasonable inference, and a logical deduction," that the complaint intended to say that the method of doing the work adopted by the master was unsafe, and that there was a lack of proper supervision, on the master's part, of the manner in which it was done.

In our judgment there was sufficient apt allegation and ample evidence pertinent thereto, to take to the jury the question whether there was negligence on the part of the defendant, the Bleachery & Print Works, which combined with the negligence of the defendant John Washington as the proximate cause of plaintiff's injuries.

It follows that our conclusion must be that it would have been reversible error to have granted the motion of the defendant for a directed verdict. See *Bunch v. American Cigar Co.*, 126 S. C., 324, 119 S. E., 828; *Cannon v. Lockhart Mills*, 101 S. C., 59, 85 S. E., 233.

As to the exceptions which charge error for granting the motion for new trial *nisi* on the ground of inconsistency of the verdicts:

It is the established rule of this jurisdiction that, if an action is brought against master and servant and the evidence discloses that the tort complained of was due alone to the negligence of the servant, a verdict which absolves the servant and binds the master cannot stand. See *Johnson v. A. C. L. R. Co.*, 142 S. C., 125, 140 S. E., 443; *Sparks v. Railroad Co.*, 104 S. C., 266, 88 S. E., 739; *Cherry v. Singer Sewing Machine Co.*, 165 S. C.,

451, 164 S. E., 126; *Kirby v. Gulf Ref. Co.,* 173 S. C., 224, 175 S. E., 535; *Pettis v. Standard Oil Co. of N. J. et al.,* 176 S. C., 88, 179 S. E., 894.

It is equally well established that, if the joint negligence of master and servant, or the concurring separate acts of negligence of master and servant, combine as the proximate cause of the injury, verdicts may be rendered against both of them.

If a delict be charged against both master and servant, and other agents and servants of the master, and it is shown that the delict could have been committed by the master through some other servant than one sued, verdict against the master alone may be rendered or the damages may be apportioned. See *Pettis v. Standard Oil Co. of N. J. et al.,* 176 S. C., 88, 179 S. E., 894; *Hhodes v. Southern Ry. Co.,* 139 S. C., 139, 137 S. E., 434; *Weeks v. Carolina Power v. Light Co.,* 156 S. C., 158, 153 S. E., 119.

In *Thomas v. Southern Gro. Stores et al.,* 177 S. C., 411, 181 S. E., 565, 568, the Grocery Stores was sued along with its representative Hambrick; the jury found $10,000-.00 against the Grocery Stores and $200.00 against Hambrick. The author of the opinion of this Court, commenting on the cases touching on the subject, said: "These cases, however, are not applicable here. In none of them does it appear that the master, through other servants or agents, as in the case at bar, participated in the wrong done by authorization, ratification, or otherwise."

We think it is patent in our present case that the defendant, through its representative Hale, ratified and acquiesced in the method by which John Washington handled the bales of cotton cloth, by which the injuries to plaintiff were inflicted; and there is evidence from which the jury might reasonably infer that, if Hale had exercised a proper supervision of the conduct of John Washington in the manner of handling the stacks of bales, he would have

discovered the danger of it. If he had discovered it, surely he would have stopped it.

"A verdict against the master and an acquittal of the servant will be sufficient to sustain a judgment against the master where the act resulting in the injury complained of was committed under the express command of the master *or where the master and servant are sued jointly for injuries resulting from the negligence of both and there is evidence of negligence on the part of the master distinct from the alleged negligent act of the servant*" (Italics added). 39 C. J., p. 1368.

"Where there is evidence tending to show an injury to a servant was caused by defective appliances, or the negligence of the master concurring with the negligence of a fellow servant, the master is not entitled to a new trial because the verdict is against him alone and in favor of his co-defendant, a vice principal." *Roberts v. Va.-Car. Chem. Co.,* 84 S. C., 283, 284, 66 S. E., 298.

It seems needless to cite further authorities.

In view of the conclusion of the Court, it is not necessary to pass upon the issues of contributory negligence and assumption of risk.

The conclusion of the Court is that the order appealed from is reversed and the case is remanded to the Circuit Court with directions to enter judgment for plaintiff in accordance with the verdicts against both defendants.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.