14717

BRYANT v. SMITH *ET UX*

(198 S. E., 20)

*Mr. C. T. Graydon,* for appellants,

*Mr. A. M. Deal,* for respondent.

July 8, 1938.

The opinion of the Court was delivered by MR. JUS-TICE FISHBURNE.

The respondent brought this action in the Richland County Court to recover damages for an alleged assault and battery.

This appeal is taken from an order overruling the demurrer interposed to the complaint.

We will let the complaint speak for itself. It is therein alleged:

"1. That plaintiff is a citizen of Spartanburg County, South Carolina, a Confederate veteran, a member of the South Carolina Division, United Confederate Veterans, and is eighty-nine years of age.

"2. That Enoch Smith and his wife, Mrs. Enoch Smith, are citizens of Richland County, South Carolina.

"3. That at the Fifty-fifth Annual Reunion of South Carolina Confederate Veterans, held at Columbia, S. C., July 30, 31, and August 1, 1936, Gen E. N. Yarborough, Commander of the South Carolina Division, was, on motion, authorized to appoint delegates to attend and cast the official vote of the South Carolina Division at the next General Reunion of United Confederate Veterans; and that at the First Fall Reunion of said South Carolina Division, held at Columbia, S. C., October 20-21, 1936, he announced the appointment of B. D. Bryant, W. E. Riley and E. N. Yarborough as such official delegates, and these appointments, on motion, were unanimously approved by the veterans attending said reunion.

"4. That at the General Reunion of United Confederate Veterans, held at Jackson, Mississippi, June 11, 1937, the said official delegates, B. D. Bryant, W. E. Riley and E. N. Yarborough, attended and cast the vote of the South Carolina division as such delegates, and that when it came to the election of a Commander-in-chief of the United Confederate Veterans for the ensuing year, said delegates cast the vote of the South Carolina division for Gen. Lee, and Gen. Lee, having received a majority of the votes cast, was thereby duly elected.

"5. That thereupon supporters of Gen. Claypool, who had been defeated in the election for commander-in-chief by Gen. Lee, created considerable disorder in the meeting, and a motion was made to throw out the vote of

the South Carolina division. Gen. Atkinson, presiding, put the motion, and called for the ayes, and then the noes. While the vote was being taken on the noes, by a standing vote, Enoch Smith called loudly and repeatedly, 'make them sit down. They are voting against us.' And thereupon his wife, Mrs. Enoch Smith, left his side and rushed over to Gen. Summer, commander of the First South Carolina Brigade, knocking over several chairs and a table, put her hands on his shoulders and pushed him down, and then rushed to plaintiff, B. D. Bryant, and struck him on his face, shocking and dazing him and knocking his glasses on the floor.

"6. That defendant Enoch Smith by his language and conduct instigated, urged and abetted his wife, Mrs. Enoch Smith, to make the physical assault upon the plaintiff set out in Paragraph 5.

"7. That by reason of the physical assault made upon him by Mrs. Enoch Smith the plaintiff suffered severe physical pain, great nervous shock, mental anguish and humiliation, which necessitated his having to be carried immediately out of the meeting hall and to the headquarters room by his grand daughter and several other ladies, where he was laid upon a reclining chair and given medical treatment; and that by reason of said physical assault made upon plaintiff willfully, wantonly, maliciously and without any provocation whatsoever plaintiff has been injured and damaged in the sum of Three Thousand ($3,000.00) Dollars."

Appellants contend that the complaint does not contain facts sufficient to constitute a cause of action, so as to hold Enoch Smith liable, as a matter of law, for the assault and battery therein charged. In the order overruling the demurrer, the lower Court held among other things, that the husband, Enoch Smith, because of the marital relation, was liable, either as a several or joint tort-feasor with his wife, the other named defendant. As supporting this conclusion, he cites the case of *Edwards v. Wessinger,* 1903,

65 S. C., 161, 43 S. E., 518, 95 Am. St. Rep., 789, which holds that if a wife commits a tort in the presence of her husband, it is presumed that she is coerced by him, and he alone is liable therefor; but if she acts deliberately, freely and independently, it is their joint tort, and they are jointly liable.

Upon due application, the appellants were granted permission to attack the decision in *Edwards v. Wessinger, supra,* with the view of having it overruled and reversed. It is obvious, that if this case, and several prior cases upholding it, still announce the true doctrine to be followed in this State, then the lower Court must be sustained on the point at issue.

It is insisted by the appellants that the common-law liability of the husband for the torts of his wife, committed by her without his participation, has been abrogated by law in South Carolina. This contention is rested upon our statute appearing in the Code of 1932 as Section 400, and upon similar legislation, previously enacted emancipating married women from their common-law disabilities. This contention is sound, and must be sustained

A review of many cases from other jurisdictions shows that the disposition of the Courts in the construction of statutes relating to the rights of married women is to hold tenaciously to the rule that statutes in derogation of the common law must be strictly construed. We have announced that rule in many cases.

The reasons for holding the husband liable for the torts of his wife under the common law appear when the general law of husband and wife is considered. He had almost absolute control over her person, so far as it was amenable to control; he was entitled to her services, and consequently to her earnings; he had a right to her goods and chattels; he could reduce her choses in action to possession during her life; he could collect and enjoy the rents and profits of her real estate. Thus he had dominion over her property and person. She was in a condition of com-

plete dependence. She could not contract in her own name; she was bound to obey him at the peril of corporal chastisement; and her legal existence was merged in his, so that they were termed and regarded as one person at law. *Martin v. Robson,* 65 Ill., 129, 16 Am. Rep., 578; *Norris v. Corkill,* 32 Kan., 409, 4 P., 862, 49 Am. Rep., 489; *Flesh v. Lindsay,* 115 Mo., 1, 21 S. W., 907, 37 Am. St. Rep., 374.

The fundamental theory underlying the law of coverture is the legal fiction of the oneness of husband and wife, the husband being the one. In harmony with the prevailing common-law principles, our Court, in *Edwards v. Wessinger, supra,* approved the following rules with reference to the liability of the husband for the torts of the wife (43 S. E., page 520) :

"(1) If the tort is committed in the presence of the husband, and nothing more appears, it is his sole tort, as the wife is considered to have acted under his coercion.

"(2) If the tort is committed in his presence, but she appears to have acted deliberately and freely, it is their joint tort.

"(3) If the tort is committed in his presence, and against his will, it is her tort, and he is liable with her.

"(4) If the tort is committed out of his presence, but by his direction, she is jointly liable with him.

"(5) If the tort is committed out of his presence, and without his knowledge or consent, he is liable with her."

Thus the rule of common-law liability is still in force in South Carolina; unless abrogated by Sec. 400 of the Code, and enactments of a similar character.

Our statute must be construed in the light of previous legislation in this State, which has already gone very far towards complete emancipation of a married woman from all the common-law disabilities of coverture. Those statutes provide that married women shall have the right to own property of every kind and description, and hold the same in their own right, and convey it as a *femme sole;* that

they shall have the right to enter into contract with reference to their separate property, and sue and be sued with reference thereto. Secs. 8574 and 8575, Code 1932. By Sec. 8572 it is provided that the real and personal property of a married woman, whether held by her at the time of her marriage or acquired by her thereafter, shall not be subject to levy and sale for her husband's debts, but shall be her separate property. And Sec. 8573 provides that all the earnings and income of a married woman shall be her own separate estate. Sec. 657, Subsection 5, provides that in an action brought by or against a married woman, judgment may be given against her as well for costs as for damages, or both, for such costs and for such damages, in the same manner as against other persons, and to be collected from her separate estate.

These enactments left but little in the way of restrictions upon the rights of a married woman. But the legislature went much further.

The first radical departure from the common-law principle in this State appears in Sec. 357 of the 1922 Code of Civil Procedure, where it was provided that, "when a married woman is a party, her husband must be joined with her, *except that: 1. When the action concerns her separate property,* she may sue or be sued alone."

In 1925 the above-mentioned section of the Code was repealed and re-enacted. As re-enacted it now appears in the Code of 1932 as Sec. 400, and reads as follows: "A married woman may sue and be sued as if she were unmarried: Provided, That neither her husband nor his property shall be liable for any recovery against her in any such suit; but judgment may be enforced by execution against her sole and separate estate in the same manner as if she were sole. When the action is between herself and her husband, she may likewise sue or be sued alone."

Even before the passage of this Act, our Court held in *Prosser v. Prosser,* 114 S. C., 45, 102 S. E., 787, that a wife

could maintain an action in tort against her husband for an assault and battery.

As the result of these successive legislative steps in the direction of a larger liberty and a corresponding responsibility, we think that the law of servitude in marriage is repealed in this State. An analysis of the broad and comprehensive language of Sec. 400 shows that the legislature meant to complete the work of emancipation, and to give married women all the rights and remedies possessed by unmarried women, and to subject them to all of the laws of the State, without reference to the marital relation.

As was said by Mr. Chief Justice Steele in *Schuler v. Henry*, 42 Colo., 367, 94 P., 360, 362, 14 L. R. A. (N. S.), 1009: "We can find no just reason for holding the husband liable for the torts committed by his wife unless committed by his direction. He cannot be held upon the common-law theory of unity of husband and wife. The unity has been severed, and we have grafted into our system of jurisprudence the benign principle of the civil law, whereunder 'husband and wife are considered as two distinct persons and may have separate estates, contracts, debts and injuries.' *Wells v. Caywood,* 3 Colo., 487. He cannot be held upon the ground that she cannot be held without him, for she can be sued in all matters as if she were sole. He cannot be held upon the ground that he has control of her property and should respond in damages with it, because he has no control of her property, and she may do with it as she pleases. He cannot be held upon the theory that he has no such legal power. As he has no legal control over her person or her property, he should not be held for her wrongs. In fact, not one of the reasons assigned by Courts and text writers for holding the husband liable exists in this state; and as the reason for holding the husband no longer prevails, he should not be required to respond in damages for the torts of his wife."

When the effect of statutes similar to ours, on the liability of a husband for his wife's torts, came before the

Supreme Court of Illinois for decision in the case of *Martin v. Robson, supra,* that tribunal declared the doctrine to be that such liability had no existence. In the course of an able opinion, Mr. Justice Thornton said: "The intention of the legislature to abrogate the common-law rule, to a great degree, that husband and wife were one person, and to give the latter the right to control her own time, to manage her separate property, and contract with reference to it, is plainly indicated by these statutes. While they do not expressly repeal the common-law rule, that the to remove the reason for the liability * * *. A liability which has for its consideration rights conferred, should no longer exist when the consideration has failed. If the relations of husband and wife have been so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated, to hold him still responsible for her conduct. If she is emancipated, he should no longer be enslaved. * * * So long as the husband was entitled to the property of the wife and to her industry, so long as he had power to direct and control her, and thus prevent her from the commission of torts, there was some reason for his liability. The reason has ceased. The ancient landmarks are gone. The maxims and authorities and adjudications of the past have faded away. The foundations hitherto deemed so essential for the preservation of the nuptial contract, and the maintenance of the marriage relation, are crumbling. The unity of husband and wife has been severed. They are now distinct persons, and may have separate legal estates, contracts, debts and injuries. * * * His legal supremacy is gone, and the scepter has departed from him."

The decision of the Illinois Court has been followed in many other jurisdictions, as will be seen by reference to 30 C. J., Sec. 417, Page 787, and to the following annotated notes: 92 Am. St. Rep., 164; 131 Am. St. Rep., 130; 20 A. L. R., 528.

It follows that so much of the decision in *Edwards v. Wessinger, supra,* as is inconsistent with our present holding, is overruled.

We are not to be understood as holding, however, that a husband is exempted from liability for his wife's torts in cases where he would be jointly responsible with her, if the marriage did not exist. Thus, in a case where the wife acts as agent for her husband, and commits a wrongful act instigated and encouraged by him, thereby injuring another, liability of this character exists regardless of the marital relation.

And this brings us to a consideration of another proposition advanced by the appellants in their demurrer.

It is contended that the complaint does not allege facts sufficient to show that Enoch Smith in any way directed or abetted his wife, Mrs. Smith, in the alleged assault and battery. We think the exception raising this point is without merit. It is alleged that when Enoch Smith called loudly and repeatedly, "Make *them* sit down; *they* are voting against us," Mrs. Smith, who was by his side, immediately arose, seized General Summer and pushed him down, and then rushing over to the plaintiff, struck him in the face, rendering him *hors de combat.*

"When a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it are to be regarded as embraced in such averment." *Mullikin v. Southern Bleachery & Print Works,* 184 S. C., 449, 192 S. E., 665, 668. In our opinion. under the circumstances alleged, a cause of action is sufficiently stated against Mr. Smith. From the language used, and the quick and direct action of Mrs. Smith, it may be reasonably inferred that he incited and instigated Mrs. Smith to forcibly compel General Summer and the plaintiff to sit down.

It is next contended that the complaint states a misjoinder of causes of action, there being one cause of action alleged against Mrs. Smith, for the actual assault and battery, and another cause of action alleged

against Mr. Smith, for merely being present at the alleged assault.

It is obvious from what we have already said, that this contention cannot be sustained.

Judgment affirmed, as modified, and cause remanded, with leave to appellants to plead over, provided this be done within ten days from the filing of the remittitur.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BONHAM and BAKER, and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.

MR. JUSTICE CARTER did not participate on account of illness.