GRACE  v.  SMITH et al.

No. 22061.

Kansas City Court of Appeals.
Missouri.

June 14, 1954.

Boyle G. Clark, Robert C. Smith, Jr., Columbia, J. H. Miller, St. Louis, Clark & Becker, Columbia, of counsel, for appellant.

Ralph L. Alexander, R. E. Ausmus, Columbia, Alexander, Harris & Welliver, Columbia, of counsel, for respondent.

SPERRY, Commissioner.

Plaintiff, administrator of the estate of Oda Grace, deceased, sued defendants, Wabash Railroad Company, a corporation, L. A. Smith, its engineer, and C. T. Schmidt, its fireman, for the wrongful death of Mrs. Grace, when a car in which she was riding was struck by a Wabash train near the station at Sturgeon, Missouri. The jury discharged Smith and Schmidt but found a verdict against Wabash, hereafter referred to as defendant, in the amount of $5,000. Defendant appeals.

After alleging various facts, with which we are not here especially concerned, plaintiff charged:

"That the said collision and the fatal injury and death of plaintiff's intestate were directly and proximately caused and occasioned by the carelessness and negligence of the defendants, L. A. Smith and C. T. Schmidt and Wabash Railroad Company, its agents, servants and employees in the following particulars to-wit:

"(A) That the defendants carelessly and negligently operated the said engine and train of cars at a rate of speed which, under the circumstances, was high, dangerous and excessive, to-wit: 75 miles per hour.

\* \* \* \* \* \*

"(D) That the defendant operated said engine and train of cars at a high and dangerous rate of speed and at a speed in excess of six (6) miles per hour in violation of the Ordinance of the City of Sturgeon, Missouri.

"(E) That the defendants failed to have and provide a watchman at said crossing and failed to have and provide a mechanical device thereat that would give sufficient warning of the approach of said engine and train of cars. \* \* \*"

Defendant maintains a line of railroad through the town of Sturgeon. The road runs in an east-west direction, and crosses Ogden Street, the main street of the town, near the depot. It is a north-south street. There are three sets of tracks at this crossing, the furthest south is the house track, the set next, to the north, is the passing track, and the set north of that is the main line. The distance from the southernmost point of the south rail of the house track to the northernmost point of the north rail of the main line is 32 feet. There was a conventional crossarm railroad sign on the south side of the tracks, along the east side of Ogden Street. On the north side of the crossing, along the west side of the street, was a "wig-wag" signal device, consisting of a metal disk from 12 to 15 inches in diameter, with a black cross painted on it, and with a red light bulb in the center of the disk. This device was attached to a post so that the disk faces traffic on the street and, when a train approaches, it lights up and swings in an arc of about one yard. On top of the post is a bell which rings at the same time that the "wig-wag" operates. This device had been in use there for a long time prior to the date of the accident.

The evidence was to the effect that Mrs. Grace and her husband had, for many years, lived on a farm south of Sturgeon; that they did their shopping and banking in Sturgeon, where they also attended church; that they frequently visited their daughter, who lived north of Sturgeon; that they frequently drove to town, and to their daughter's home, over this crossing.

Mr. Carter, a lawyer who lived at Sturgeon, was driving south along Ogden Street, to his home, at about 7:10 p. m., on October 9, 1952. He testified to the effect that, as he approached this crossing he heard a train approaching from the west and observed the "wig-wag" signal in operation; that he stopped his automobile about 60 feet north of the crossing and observed an automobile approaching from the south; that he turned off his lights; that the automobile did not stop or slow down, but approached at a speed of 20 miles per hour; that the train was whistling and its bell was ringing; that the "wig-wag" signal was in operation, the bell ringing; that he didn't think the light was burning on the "wig-wag"; that, when the automobile entered upon the main line, it was struck by the train; that the train was traveling at a speed of 75 or 80 miles per hour; that, when the bodies of Mr. and Mrs. Grace were found, Mr. Grace was dead. Mrs. Grace died within a few minutes thereafter. He stated that, at the time the accident occurred, there were two boxcars parked on the house track, west of the crossing; that the track curves to the northwest from the crossing; that, on account of the boxcars being located as they were and, on account of the curve, witness did not think that one approaching from the south, in an automobile, could have seen a train approaching from the west, even in daytime; that such a person would not have

been able to see the headlight of an approaching train but might have seen rays of light therefrom; that the boxcars would block the view; that witness first saw the oscillating "wig-wag" and heard the bell, when he was about 250 feet north of the crossing.

Mr. Seitz, signal maintenance man for the Wabash, stated that he was called to Sturgeon at about 10:00 p. m., October 9, to repair the light on the "wig-wag" signal.; that the wire was broken and the light was out; that, three days before, the light was in operation when he inspected it; that it is possible for the light to operate at one time, and fail to operate at another time, by reason of a broken wire.

Mr. Sexton stated that, one night some ten days before the accident, he observed a train pass over this crossing; that the light on the "wig-wag" was not in operation; that, the following day, he asked the station agent of the Wabash if he had noticed this fact; that the Wabash maintenance man arrived during this conversation.

Mr. Estepp stated that, either on the morning of the accident or the day before, he observed that the light on the "wig-wag" was not in operation.

Mr. Jennings stated that, after the accident, on the night of October 9, 1952, he observed a freight train pass through Sturgeon; that the light on the "wig-wag" was not in operation; that, about a week or ten days before the accident occurred, he observed a train pass over the crossing; that the light on the "wig-wag" was not in operation.

Mr. Palmer observed that the light was not in operation on the night of the accident, an hour or so after the accident occurred.

Mr. Roberts, while the train that caused the casualty was still on the track, noticed that the light was not working.

Mr. Smith, the engineer who was operating the train at the time the casualty occurred, stated that the train was scheduled to leave Moberly at 6:48 p. m., and arrive at Sturgeon at 7:00 p. m.; that the train actually left at 7:00 and arrived at 7:05, or 7:06; that the diesel motored engine was equipped with whistle, bell, headlight and Mar's light, the latter oscillating and throwing its beams to the front and to the side; that the speed at Sturgeon was 78 miles per hour; that there are no slow orders for Sturgeon; that he still travels through Sturgeon at 78 miles per hour; that maximum speed permitted is 78 miles; that when he observed the Grace automobile the engine was probably 75 feet from the crossing; that he applied emergency brakes before the collision occurred.

Mr. Schmidt, the fireman, stated that, on October 9, the train left Moberly at 7:00 p. m., and arrived at Sturgeon at 7:10; that it was due to leave at 6:48 and arrive at 7:00 p. m.; that the distance is 12–14 miles. The following question was asked the witness: "Your time between Moberly and St. Louis is geared to a speed of approximately 78 miles per hour. Is that true?" He answered: "That's our approximate speed. I don't know what the train's average speed is, but our top speed we were allowed to go is 78 miles per hour."

Plaintiff's main instruction was as follows:

"The Court instructs the jury that if you find and believe from the evidence that on October 9, 1952, at the time and place in question, in the City of Sturgeon, Boone County, Missouri, the defendant, Wabash Railroad Company maintained its railroad track for the operation of its trains thereon and thereover and that said railroad track then and there, ran generally in an east and west direction and if you further find and believe from the evidence that, at said time and place, Ogden Street was a public thoroughfare in the City of Sturgeon running in a north and south direction and intersected with the railroad track of the defendant, Wabash Railroad Company, and if you further find that, at said time and place, the defendant, Wabash Railroad Company through its agents, servants and employees operated its said train in an easterly direction over and along said railroad track

and over and across said Ogden Street, and if you further find and believe from the evidence that, at said time and place one Oda Grace, while in the exercise of due care for her own safety, was riding in an automobile being driven and operated in a northerly direction on said Ogden Street and approaching said railroad track and the crossing of said railroad track over and across Ogden Street; and if you further find and believe from the evidence that at said time and place, said railroad train did collide with the automobile in which the said Oda Grace was riding, and if you further find and believe from the evidence, that, at the time and place in question, the defendant, Wabash Railroad Company, its agents, servants, employees operated said train at a high, dangerous and excessive rate of speed under the circumstances then and there existing; and if you further find and believe from the evidence that, at said time, there was an ordinance in force in the City of Sturgeon prohibiting the running of trains at a greater speed than six (6) miles per hour in said City of Sturgeon and that the defendant, Wabash Railroad Company, its agents, servants and employees, did, at said time and place, run its engine and cars at a greater speed than six (6) miles per hour, and if you further find and believe from the evidence that defendant Wabash Railroad Company did install and maintain an automatic warning light at said crossing and that said automatic warning had been maintained by said defendant, if you so find, for sufficient length of time for persons traveling upon and along said Ogden Street to rely on said sign to warn them of the approach of any train or trains on said railroad track at said crossing, and if you further find and believe from the evidence that the defendant, Wabash Railroad Company, negligently and carelessly permitted said automatic warning light to be and remain out of order and repair, and that same would not operate, and that said automatic warning light had been in such condition for a sufficient length of time for said defendant, by the exercise of ordinary care on its part, to have discovered that said automatic signal light was in such condition, and to have repaired the same prior to said collision,

and if you further find that the said Oda Grace knew defendant had installed and had been maintaining said automatic warning light, and relied thereon, and if you further find that such acts and failures, and each of them if you so find, were negligence on the part of the defendant, Wabash Railroad Company and if your further find and believe from the evidence then as a direct and proximate result of such negligence on the part of said defendant, if you so find, said railroad train did collide with the automobile in which the said Oda Grace was riding, and that as a direct and proximate result of said collision the said Oda Grace was injured and that she died as a direct and proximate result of such injuries, if you so · find, * * * then your verdict shall be for the plaintiff and against the defendant, Wabash Railroad Company."

Defendant urges reversal for the following reason: Since the jury found for defendant's fireman and engineer, it could not properly find a verdict against defendant Wabash because the latter, under the pleadings, the evidence, and the instructions, could only be liable on the theory of *respondeat superior* for negligent speed; that since the operators of the train were exonerated from liability because of negligent speed, then speed was not the proximate cause of the casualty and, therefore, it must be held, as a matter of law, that defendant Wabash cannot be charged with liability on the ground of negligent speed; and that the defective "wig-wag" signal was not the proximate cause of the injury.

Plaintiff admits that where recovery against the master is predicated solely on the negligence of the servant the master can be held liable only on the doctrine of *respondeat superior,* that a verdict exonerating the servant and holding the master is inconsistent and must be set aside. That is the settled law of Missouri. Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813, 816.

Plaintiff, however, urges an exception to the above rule. He cites St. Louis-San Francisco Railway Co. v. Simmons, 116 Okl. 126, 242 P. 151, 152, where it is said:

"The exception is that where other negligence of the employer concurs with that of the employee, and there is evidence to support the active concurring negligence of the master, a verdict against the employer will stand although there is a failure to find a verdict against the employee."

■ It is clear that an employer may be held, when the agent is discharged, in a case where two independent grounds of negligence are relied on, one having been occasioned by the act of the agent alone and the other by the act of the employer alone, or of agents and servants of the employer other than the agent sued. McLaughlin v. Chief Consol. Mining Co., 62 Utah 532, 220 P. 726, 730: Note 78 A.L.R. 366; Atterbury v. Temple Stephens Co., 353 Mo. 5, 181 S.W.2d 659, 662. Plaintiff here contends that a principal may be held for negligent speed, where the operator-employee is discharged, if it appears that the employee was acting with the knowledge and under the command of the principal; as where the excessive speed of the train is due to the act of the engineer in driving the train at such a speed pursuant to a predetermined schedule ordered by the employer.

In the Simmons case the petition charged the defendant Railroad Company and Yoacum, its engineer, with carelessly and negligently driving and operating the train at a speed of 75 or 80 miles per hour, resulting in the death of plaintiff's minor son. The evidence was to the effect that the train was a "special" conveying railway officials, and notice was given in advance to maintenance employees to watch for it. It was to be a fast train. When the accident occurred it was traveling at a speed of 60 to 65 miles per hour.

The court said:

"Paragraph 11 of the original petition jointly charged the defendants with carelessly and negligently driving and operating said train at a speed of 75 or 80 miles per hour at a public crossing, as a result of which plaintiff's minor son was killed. If the engineer, Yoacum, was guilty of operating the train at a negligent speed without the defendant railway company's knowledge or consent, the company would be liable therefor, only on the principle of respondeat superior. If, however, the negligent speed charged in the petition was maintained by the express direction of the officials of the company upon a schedule predetermined and fixed before the train started upon its journey, the railway company would, on that account, be negligent, and its negligence would concur with that of the employee engineer, and the right to recover against the engineer and the railway company would be joint.

\* \* \* \* \* \*

"The original petition, we think, was sufficient to admit evidence of negligence by the defendant railway company distinct from the alleged negligence of the defendant Yoacum. If such concurring negligence was charged in the petition and reasonably supported by evidence introduced at the trial, it would support a judgment against the defendant railway company, and a verdict exonerating Yoacum would not vitiate the finding against the company. McLaughlin v. Chief Consolidated Mining Co., 62 Utah 532, 220 P. 726."

In Benson v. Southern Pac. Co., 177 Cal. 777, 171 P. 948, 949, involving a similar situation, the California Supreme Court said:

"\* \* \* In the instant case evidence was introduced on the trial tending to prove that the train was being operated on schedule time and at a rate of speed predetermined by the defendant corporation. If the verdict was based upon that view of the case, the responsibility of the parties defendant being joint, the defendant company would not be prejudiced by the failure to find against its codefendant. All intendments being in favor of the verdict, it must be considered that the jury based the same upon a finding of joint liability, unless there is something in the record which prevents that conclusion."

■ The limits of the rule here invoked are defined in 57 C.J.S., Master and Serv-

ant, § 619, p. 423, where it is stated that exoneration of the servant does not bar a judgment against the master when the act complained of was done upon the express order of the master. The principle has been applied in the following cases: McCullough v. Langer, 23 Cal.App.2d 510, 73 P.2d 649; Armstrong v. Wallace, 8 Cal.App.2d 429, 47 P.2d 740, 745; Millikin v. Southern Bleachery & Print Works, 184 S.C. 449, 192 S.E. 665, 669; Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N.W. 712, 720.

In a recent decision by this court, Hanson v. Dalton Coal & Materials Co., Mo. App., 264 S.W.2d 897, 902 (Par. 5), we held that the owner of a truck involved in a collision might be held for damages when the operator had been discharged by the jury.

■■ The petition in the case at bar charged the Wabash, the fireman, and the engineer jointly, with negligent speed. While it was not specifically pleaded that the speed was predetermined by the Wabash, the pleading permitted proof of that fact. Hanson v. Dalton Coal & Materials Co., supra, and cases there cited. The evidence was that the schedule of the train required it to travel from Moberly to Sturgeon, a distance of 12–14 miles, within 12 minutes. The predetermined rate of speed was, therefore, from 60 to 70 miles per hour. This speed was in violation of the ordinance and negligent for that reason, and it was common-law negligence. This court so held in a death case against the Wabash at this very crossing. Ruenzi v. Payne, 208 Mo. App. 113, 119, 231 S.W. 294.

Plaintiff submitted his case against the defendants' jointly so that the verdict was permissible under the instructions.

In view of our holding with respect to the issue of negligent speed it is not necessary that we extend this opinion to include a discussion of the defective "wig-wag" signal.

■■. Under the evidence, on the whole record, we cannot say that deceased was guilty of contributory negligence as a matter of law,

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

DEW and BROADDUS, JJ., concur.

CAVE, P. J., dissents.

CAVE, Presiding Judge (dissenting).

I cannot concur in the majority opinion for the reason that, in my judgment, the suit was not brought, tried or submitted on the theory upon which it is decided by the majority opinion.